COMMISSIONER OF INTERNAL REVENUE v. CARDEZA'S ESTATE et al.

CARDEZA'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 9207, 9208.

United States Court of Appeals
Third Circuit.

Argued Oct. 16, 1947.
Decided Feb. 8, 1949.

O'CONNELL, Circuit Judge, dissenting in part.

———◆———

Helen Goodner, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen. and Helen R. Carloss, Sp. Asst. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

William R. Spofford, of Philadephia, Pa. (H. Ober Hess, J. Harry Wagner, Jr., and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., on the brief), for Taxpayer.

Before STEPHENS, GOODRICH, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

The principal questions posed by the appeals at bar are not without difficulty. As was aptly stated by the American Law Institute at 3 Restatement, Property, 1936 ed., page 1810, " * * * the American case authority on powers of appointment is distinctly thin in quantity—so thin that in nearly all states there are many important matters upon which local decisions are not yet conclusive, and in many states practically the entire field remains free for future development."

Specifically, we have been called upon to decide (a) whether the doctrine enunciated in Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, forecloses our review of the substantive questions which follow; (b) whether, under section 812(b) (1) of the Internal Revenue Code, 26 U.S.C.A. § 812(b) (1), the value of a trust established by decedent for perpetual maintenance of a family mausoleum is deductible from her gross estate; (c) whether, under sections 811(d) (2) and 811(c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c), (d) (2), her gross estate includes property which is part of the trust created by her father, but which was purchased with donations she made to that trust; (d) whether, under section 811(a), decedent's gross estate includes the value of certain future interests, the coming into possession of which is contingent upon the death of decedent's son without children; (e) whether section 811(f) of the Internal Revenue Code, prior to the amendments of the Revenue Act of 1942, requires taxation of property over which decedent had a general testamentary power of appointment, if the appointee renounced a bequest made by decedent pursuant to that power; and (f) whether in the alternative the property subject to the power of appointment, except for a life estate in the renouncer, passed to the decedent by intestacy and is therefore taxable under section 811(a) of the Internal Revenue Code.

According to the Commissioner, the deficiency in decedent's estate tax was more than $2,300,000; the Tax Court, resolving most of the aforementioned issues in favor of the estate, determined the tax deficiency to be $116,232.69. Both sides have appealed.

The facts were stipulated. Thomas Drake ("Drake") died testate in 1890. His survivors were decedent, who was his daughter and sole next of kin and heir at law, and his grandson Thomas D. M. Cardeza ("Thomas"), then aged 14, decedent's only child. Grandfather Drake's will, inter alia, directed the creation of a residuary trust ("Drake Trust"), the annual income

from which was to be divided and paid in the following manner: (a) $5,000 to his daughter, decedent, for life, for charitable distribution; (b) two-thirds of the remainder to his daughter, decedent, for life; and (c) the balance to his grandson Thomas for life. As to the corpus of the Drake Trust, (a) no provision specifically stated what disposition was to be made of the part producing the $5,000 charitable annuity; (b) the two-thirds portion was subject to a gentral testamentary power of appointment by decedent; and (c) the balance was to be divided per stirpes among Thomas' children and the issue of Thomas' deceased children, Thomas however having the privilege by will of reserving sufficient principal to permit Thomas' widow to receive up to $10,000 per year for life.

Several contingencies were expressly covered in Drake's will: (a) if no child, grandchild, or other descendant of Thomas survived Thomas' widow, the one-third balance of the principal was to be paid to Drake's other grandchildren or their descendants per stirpes; (b) if Drake's daughter, the decedent, died "without having executed the power of disposition hereinbefore given to her," Drake's grandchildren were to share the income from the two-thirds portion until Thomas died, at which time that portion of the corpus was to be divided per stirpes among Drake's grandchildren and the issue of Drake's deceased children and grandchildren; (c) if Drake's daughter, decedent, survived all her children and their issue, she was to receive thereafter all the Drake Trust income for life and to have a general testamentary power of appointment of the entire trust corpus, i. e., the one-third balance as well as the two-thirds portion; and (d) if Drake's daughter, decedent, died "without having executed the power of disposition hereinbefore given to her" and if no lineal descendant survived her, the Drake Trust was to be used to establish a girls' private school. In connection with these contingencies, we deem it useful at this point to mention that decedent died before Thomas did, and that Thomas was her lone lineal descendant.

On eight occasions before she died, decedent donated to the Drake Trust funds totalling approximately $1,000,000, so as to enable the Drake Trust to exercise certain stock subscription warrants, since Drake had not authorized the Drake trustees to use the Drake Trust assets for that purpose.

In 1939, decedent died testate. A childless couple, Thomas, then aged 64, and his wife Mary, five years his junior, survived decedent. As to decedent's will, only three provisions need concern us here: (a) naming several life beneficiaries of the income, she created a residuary trust, the corpus of which Thomas was to receive after the death of the life beneficiaries; (b) reciting that her father Drake "did confer upon me the power of appointment, and the exercise of such power of appointment," decedent gave and devised "unto my son, Thomas Drake Martinez Cardeza all of the property and estate of which I have the power of appointment to him and his heirs and assigns, absolutely, giving and granting unto him a right of appointment or disposal of any inheritance which I may receive from said estate"; and (c) she created a $25,000 trust "for the perpetual care, upkeep, all necessary maintenance, repairs and replacements of the Drake Mausoleum," where she was to be buried.

About fourteen months after decedent died and the admission of her will into probate, but before the estate tax return was filed by decedent's executors, her son Thomas in writing renounced "the benefits I may receive under the exercise of the said power by my mother in her Last Will," but reserving all other benefits to which he was entitled under the wills of Drake, Thomas' grandfather, and decedent, Thomas' mother.

Shortly after this renunciation, the account of grandfather Drake's estate was called for audit. Two counsel appeared, one representing the "Accountants" and the other the "unborn and unascertained remaindermen." Judge Sinkler, after outlining briefly some of the pertinent provisions of the two wills and the renunciation, made the following statement: "Accordingly, the balance of principal [of the Drake Trust] will be held by the trustees and the entire net income therefrom paid to the said Thomas D. M. Cardeza for life." He

awarded the Drake Trust principal, then in excess of $5,000,000, "to be retained by the accountants for the uses and purposes of the trust."

About three months later, Judge Stearne of the same Orphans' Court, in confirming the first account of the executors of decedent, mentioned substantially the same details and referred to Judge Sinkler's adjudication in the auditing of grandfather Drake's estate.

Thomas' wife, Mary, died in 1943, after the Commissioner sent the deficiency letter prompting this litigation, but before the Tax Court heard this case. Thomas was still alive and childless when argument was had on the instant appeals. A urologist was prepared to testify that "there has not been and is not now any known physical impediment to the ability of said Thomas D. M. Cardeza to procreate."

The Tax Court held as follows: (1) as to the trust for mausoleum maintenance, section 812(b) (1) of the Internal Revenue Code required application of Pennsylvania law, which allows such deductions; (2) as to the property purchased from the donations which decedent made to the Drake Trust, the entire value of that property was part of her gross estate;[1] (3) as to the entire corpus of the Drake Estate, although Thomas' death without issue would cause an intestacy from which decedent's estate would benefit, any attempt to evaluate "such a highly contingent and remote interest" of decedent at the time of her death would be merely speculative;[2] (4) as to the two-thirds portion of the corpus

of the Drake Trust, section 811(f) of the Internal Revenue Code, as it read prior to 1942, did not require inclusion in decedent's gross estate, both because the facts at bar are governed in that respect by Helvering v. Grinnell, 1935, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, and because the Pennsylvania probate court had here found decedent's appointment to be ineffectual in view of Thomas' renunciation; and (5) the property subject to the power did not become part of decedent's estate by intestacy because, in Pennsylvania, "in the absence of expressed contrary intention a legacy bequeathed in default of appointment vests in the legatee on the death of testator, subject to be divested by the power of appointment," and Thomas' renunciation completely nullified the appointment which decedent made, so that title remained where it had been before her purported appointment. The opinion of the Tax Court, 1945, is reported at 5 T.C. 202.

**A. Applicability of the Dobson Doctrine.**

■ When the instant appeal was heard, considerable attention was devoted to the question whether this court was precluded from reviewing the substantive questions hereinafter discussed, by virtue of the so-called "Dobson doctrine." Legislative revision of that doctrine has eliminated the necessity for determination of the extent of its applicability to the case at bar.[3] Under the standards set forth in such cases as Trust of Bingham v. Commissioner, 1945, 325 U.S. 365, 372, 65 S.Ct. 1232, 89 L.Ed. 1670, 163 A.L.R. 1175; Crane v. Commissioner, 1947, 331 U.S. 1, 15, 67 S.Ct. 1047,

[1] The Tax Court held that the donations forming part of the two-thirds portion of the corpus were taxable because decedent's power of appointment was a power to "alter, amend, [or] revoke," within the meaning of section 811(d) of the I. R. C.; and the donations forming part of the one-third balance of the corpus were taxable because decedent had made transfers "intended to take effect in possession or enjoyment at or after" her death, as section 811(c) of the I. R. C. is interpreted in Fidelity-Philadelphia Trust Co. v. Rothensies, 1945, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782, 159 A.L.R. 227.

[2] On this appeal, the Commissioner has indicated his willingness to accept as rea-

sonable the Tax Court interpretation of Drake's will insofar as the Tax Court found that Drake intended that part of the corpus producing the $5,000 charitable annuity to be distributed in a manner similar to that of the one-third balance of the corpus.

[3] Section 36, P.L. 773, 80th Congress, effective September 1, 1948. This provision amends 26 U.S.C.A. § 1141(a). It is to be noted that, in Commissioner v. Church's Estate, 69 S.Ct. 322, 337, the Supreme Court adjudicated the merits of a tax case pending in that Court when P.L. 773 became effective, although the intermediate appellate court had based its decision squarely on the Dobson doctrine; 3 Cir., 1947, 161 F.2d 11.

91 L.Ed. 1301, and Commissioner v. Sunnen, 1948, 333 U.S. 591, 607, 68 S.Ct. 715, nevertheless, we believe the instant issues clearly come within the category of questions of law appropriate for our review, as indeed the Tax Court treated them.

## B. Deductibility of the Trust for Mausoleum Maintenance.

■ The question of deductibility of the $25,000 trust for mausoleum maintenance need not long detain us. As the Tax Court pointed out, the statute allows a deduction for "such amounts * * * for funeral expenses * * * as are allowed by the law of the jurisdiction under which the estate is being administered." Here, then, is an instance where Congress, rather than attempting uniformity, specifically has contemplated that local law determine the quantum of the deduction. We need not gloss over the already clear picture of Pennsylvania's attitude toward funeral expenses which is set forth in the Tax Court opinion.

## C. Status of the Donations Made by Decedent to the Drake Trust.

■ As stated in our recital of the facts, part of the property in the Drake Trust was purchased with donations made by decedent. The estate does not question the obviously correct conclusion of the Tax Court that two-thirds of the property purchased from the donations comes within decedent's gross estate by virtue of section 811(d) of the Internal Revenue Code. The estate has asserted, however, that the property representing one-third of the donations is not includible in the gross estate under the provisions of section 811(c) of the Internal Revenue Code. In all probability, the decision of the Supreme Court in Commissioner v. Church's Estate, 1949, 69 S.Ct. 322, 337, has set at rest this contention.

Apart from the Church decision, however, the taxpayer's position could not prevail. In support of its position, the estate points to the amendments to section 81.17 of Regulation 105 effected by T.D. 5512, dated May 1, 1946. The Treasury decision referred to defines the phrase "intended to take effect in possession or enjoyment at or after" death as meaning that "(1) possession or enjoyment of the transferred interest can be obtained only by beneficiaries who must survive the decedent, and (2) the decedent or his estate possesses any right or interest in the property (whether arising by the express terms of the instrument of transfer or otherwise)." This ruling was promulgated subsequent to the decision of the Tax Court in this case.

Reading the Drake will as a whole, we are impelled to the conclusion that Drake wanted the children or other descendants of Thomas to take the fee of the one-third balance only if they survived decedent. This interpretation more completely explains and gives effect to the provision granting decedent a power of appointment over the entire Drake Trust corpus if she survived her children and their issue, as well as the provision establishing the girls' school if decedent outlived all her lineal descendants and if she did not execute her power. Thus, decedent had a power of appointment as well over the donations forming part of the one-third balance of the corpus of the Drake estate; and it was her death which determined who the eventual takers of that third would be. While the string she held may have been tenuous, it was nevertheless sufficient to require the inclusion of the property in her estate, just as in Fidelity-Philadelphia Trust Co. v. Rothensies, 1945, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782, 159 A.L.R. 227. The standards of the Treasury ruling are met by the facts here involved. Therefore, we reach the same conclusion as did the Tax Court on this question.

## D. Taxability of the Corpus Upon the Contingency of Thomas Dying Without Issue.[4]

■ There can be no doubt that Thomas, an aged widower may well die without children. If so, the entire corpus would re-

---

[4] The issue presented under this heading was advanced by the Commissioner as an alternative ground for reversal of the Tax Court, in the event that the issues discussed in headings E and F, infra, were decided adversely to him. Consideration of this issue before those in E and F permits juxtaposition of the interpretations on which this court has been unable to agree.

vert to Drake's estate and pass by intestacy to decedent's estate. The Tax Court nevertheless held that the value of this contingent interest should not be included in decedent's gross estate. With this conclusion we agree.

When decedent died in 1939, perhaps the chances were that Thomas and Mary would not thereafter have children. This, however, did not foreclose the possibility that Mary would predecease Thomas, as in fact did happen, and that Thomas might subsequently remarry and attain fatherhood.[5] Under the circumstances, we deem this sufficient for application of the statement in Robinette v. Helvering, 1943, 318 U.S. 184, 189, 63 S.Ct. 540, 543, 87 L.Ed. 700, that "even the actuarial art could do [no] more than guess at the value here in question." Consequently, we endorse the decision of the Tax Court as to this issue.

E. Applicability of Helvering v. Grinnell.

In the case at bar, as in Helvering v. Grinnell, supra, the donee of a general testamentary power appointed someone who renounced any right to take under the power. The Supreme Court of the United States, in the Grinnell case, held that the property did not come within the terms of section 811(f) of the Internal Revenue Code, as the provision then read. Without embarking upon too detailed a comparison of the two sets of facts, we are satisfied that the determination of the Tax Court, that the Grinnell decision prevents taxation under section 811(f), has a sound foundation. Whatever limitations upon the scope of the Grinnell decision may have been accomplished by Helvering v. Safe Deposit Co., 1942, 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513, and Estate of Rogers v. Commissioner, 1943, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134, the fact remains that neither of these later decisions questions the validity of the Grinnell adjudication on the facts of that case; and, as far as section 811(f) is concerned, we can find in the facts before us no difference warranting inclusion of the property as passing under the exercise of a power of appointment. That Thomas was granted by the appointment an even greater interest than he would have had if the power had not been executed seems to us an a fortiori basis for applying the Grinnell rule; for, since Thomas actually sacrificed his right to take a greater estate, it would be purely fictional to assert that the property nevertheless "passed" by virtue of the appointment, as the statute then required. Without resorting to the action of the probate court, therefore, we hold that, on the authority of Helvering v. Grinnell, supra, Thomas' renunciation effectively barred the taxation of the two-thirds portion under section 811(f) of the Internal Revenue Code.

F. Taxation of the Two-Thirds Portion as Property Passing by Intestacy.

So far, the opinion of this court is unanimous. With regard to the point discussed under this heading "F", the views expressed are in the nature of a dissent by the writer, the majority view of Judges Goodrich and Stephens on this point being recorded immediately following this opinion.

Since Helvering v. Grinnell bars taxation under the provisions of section 811(f), as it read prior to 1942, it is necessary to examine the Commissioner's alternative contention that the execution of the power by decedent cut off the gift in default of appointment, except for a life estate in Thomas. The Tax Court and the majority of this court have decided adversely to this contention. With this the writer cannot agree.

First, I deem it most important to note that the default gift of the two-thirds portion of the corpus depended upon decedent dying "without having executed the power." No contention has been made at any time that decedent did not, so far as she was capable, *execute* the power. Whether or not the *exercise* of her power failed because of Thomas' renunciation would appear to me to be of dubious value, if, as seems undisputed, decedent performed exactly what Drake contemplated.

The distinction I make is more than a mere formalism. The law recognizes that a gift need not be accepted; consequently,

---

[5] Headlines from a United Press news release dated October 20, 1947: "Father Who Eats Peppers Awaits 10th Child at 88," "Third Baby in Little Over 2 Years to Be Born to Wife, 23; Nothing Unusual, He Says."

for an exercise of a power to be consummated, the appointee must indicate assent. Validity of execution of a power, on the other hand, depends solely upon the action of the person possessing the power. Grandfather Drake, preparing his will long before the estate tax was promulgated, used words of property law with generally accepted meanings. Drake's will discloses that he wished to give decedent *all* the discretion in determining whether his eventual beneficiary was to be as specified in the default gift. Decedent had her choice of refraining from executing her power, and thereby permitting the property to pass to the default takers, or to execute the power and at the same time eliminate the interest of any default takers not designated in the execution. She determined upon the latter course. I have no doubt that, as of the moment when decedent died, Drake's default gift of the two-thirds portion of the corpus to his grandchildren other than Thomas (there could be no such grandchildren, once decedent died) and the issue of Drake's deceased children and grandchildren (a group which may yet come into being; see heading D, supra) was wiped out.

Common law, as enunciated in cases like Helvering v. Grinnell, supra, gave Thomas thereafter a right, which I shall call an election, to refuse in toto to accept the property, or to choose between taking under Drake's or his mother's will; but the default takers other than Thomas certainly could not legally compel Thomas to renounce the estate which decedent appointed to him, nor could they choose to ignore decedent's execution of the power and demand their default gifts. In neither Drake's nor decedent's will can I find any intent to confer upon Thomas the prerogative of reinstating the default gifts to others than himself. By refusing to accept the two-thirds portion of the corpus of the Drake residuary estate, Thomas brought about a partial intestacy as to that portion.

I wish to stress that, in so far as the provisions of the Drake will here in question are concerned, there is no inadequacy or other flaw causing an intestacy. The intestacy which here arose stems not from Drake's failure to make a comprehensive disposition of the two-thirds portion, but rather from an event completely beyond Drake's control: viz., the renunciation of Thomas. The situation thereby created was an unforeseen failure of part of the residuary bequest and a consequent intestacy, just as would a refusal to accept any residuary legacy. See in re Gorgas' Estate, 1895, 166 Pa. 269, 31 A. 86. Thomas voluntarily elected not to abide by the express desires of both his grandfather, who wished decedent to have complete control over the eventual disposition of the property, and his mother, who for some reason deemed it preferable to give Thomas rather than Thomas' children (the group which may yet come into being) the future interest in the two-thirds portion of the corpus. In view of the above, it is not surprising that neither grandfather Drake nor decedent gave Thomas authority to restore the default gifts to others than himself. See 49 C. J. Powers § 150, page 1306, which reads: "An appointee may repudiate the appointment or refuse to receive it, in which case the exercise of the power is nugatory, although it would seem that it does not necessarily constitute a failure to appoint such as to allow the property to pass to those to whom it is limited in default of appointment * * *"; and see cases collected at 93 A.L.R. 967.

The conclusion reached above is in no wise inconsistent with the action of the Pennsylvania probate court. Judge Sinkler's order that Thomas be paid the income of the two-thirds portion of the trust and that the trust continue, was necessitated by Thomas' election to take the default gift. I would be confronted with the problem of determining the weight to be given a conflicting probate decision only if, for example, the probate court had stated that all the default gifts had again become effective as a result of Thomas' renunciation. As matters stand, however, Pennsylvania law has declared only that Thomas' life estate in the income requires continuance of the trust, with which conclusion I am in full accord. It is sufficient that I find that, for federal tax purposes, decedent did execute the power in accordance with the provisions of the Drake will; that her execution of the power, by granting to Thomas

the complete interest (a greater estate than he would have taken in default of appointment), served to eliminate the default gift of the remainder of the two-thirds portion to the grandchildren of Drake surviving Thomas and the issue of Drake's deceased children and grandchildren; that Thomas' election to renounce the legacy bequeathed him by the execution of the power could not serve to reinstate default gifts to others than himself; and that the two-thirds portion of the corpus, except for Thomas' life interest in the income, consequently passed by intestacy. Decedent being the sole next of kin and heir at law of Drake, the intestate property became part of her estate and subject to estate tax assessment. Cf. our holdings in Selig v. United States, 3 Cir., 1948, 166 F.2d 299, and Marine National Bank v. Commissioner, 3 Cir., 1948, 168 F.2d 400, as to the ability of legatees by disclaimer to reinstate otherwise invalid bequests to charitable institutions.

I think the divergence of views here expressed by this court might best be particularized by testing the principle which my associates espouse:

(1) If the default takers other than Thomas were not divested of their interests by the provisions of decedent's will in relation to the power, could they have enforced their rights at any time during the fourteen months between decedent's death and Thomas' renunciation? In whom did the title to this property rest during this period? How long a period of time may elapse in such instance before an appointee is estopped from an election? It seems to me that the majority view presents the dilemma of recognizing such property rights in default takers even though acquisition of the property bequeathed depends solely upon the altruistic action of a person with an adverse interest.

(2) Let us assume hypothetically that the two-thirds portion of Drake's estate had been $1,000,000, and that the default gifts had been $500,000 to Thomas and $500,000 to B; that decedent, executing her power, had appointed $600,000 to Thomas and $400,000 to X; and that Thomas had renounced. We all agree that Thomas could take his $500,000 default gift; but, under the view of the majority of this court, would not B be awarded the other $500,000 despite the appointment of $400,000 to X by decedent? If so, is such a result consonant with the language or discernible intent of either the donor or the donee? A further example in the footnote below, in the same vein, demonstrates to me the impracticability of the principle which the majority of this court here enunciates.[6]

Accordingly, I would reverse the decision of the Tax Court as to the two-thirds portion of the corpus of the Drake Trust; but, for the reasons stated under headings A to E of this opinion and that of the majority with reference to subdivision F, the decision of the Tax Court will be affirmed.

GOODRICH, Circuit Judge.

Judge Stephens and I disagree with our colleague as to Point F, and the following is, therefore, the court opinion upon that point.

F. Taxability of the Two-Thirds Portion as Part of the Taxpayer's Estate.

The conclusion that the two-thirds portion is not taxable under section 811(f) requires us to examine the Commissioner's alternative contention that the property is taxable under section 811(a) as part of the taxpayer's estate. The Commissioner contends that the exercise of the power of appointment by Mrs. Cardeza, although ineffective to transfer the property to her appointee, was effective to cut off the gift in default of appointment, except for the life estate to Thomas. It is urged that the clause in the Drake will which provides that the gift in default of appointment is to take effect if the donee dies "without having executed the power" should be con-

---

[6] Suppose that Drake had given decedent a power to appoint a $1,000,000 estate, with default gifts of $400,000 to Thomas, $300,000 to D, $200,000 to E, and $100,000 to F. Decedent appoints $600,000 to Thomas and $400,000 to X. Thomas renounces. We agree that Thomas can elect to take his default gift of $400,000. Under the theory of the majority, who gets the $200,000 which Thomas rejected? Does D get all? Or E? Or does F get $100,000 of it? Or, if the $200,000 be prorated, what authority supports such division?

strued to mean that the default legatees take the property only if the donee has not acted in the manner required by law to exercise the power. Since the donee here acted fully and correctly but did not effectively transfer the property, due to the renunciation by Thomas, the Commissioner argues that the situation is not covered by the Drake will, and that the two-thirds portion of the corpus passed as intestate property from the Drake estate to the taxpayer as successor to her father.

The narrow question confronting us is accurately posed by an illustrative hypothetical case: T, a testator, makes a will in which he gives a life estate to A with a testamentary power of appointment in A. He accompanies this grant, in the same document, with a gift over in default of appointment. T dies. Then A dies leaving a will in which he exercises the power by appointing B. B, however, renounces. What happens to the property which is the subject matter of the power?

■■ It is essential to note at the outset that the question whether certain property is part of a decedent's estate is one of state law. The federal government may tax the privilege of exercising a power of appointment or of possessing such a power.[1] But if taxability, under the applicable federal statute, depends upon whether the decedent had an interest in the property, reference must be made to the law of the state or states concerned.[2] We apply the law of Pennsylvania, therefore, to the estate of this Pennsylvania decedent.

■ Although the case authority is indeed distinctly thin, we are not without clear guideposts in Pennsylvania and elsewhere which indicate that the property passes to the legatees named in default of appointment in the situation under discussion.

■ It is the settled rule in Pennsylvania, and the predominant view in this country generally, that in the absence of an express contrary intention, a legacy in default of appointment vests in the legatee on the testator's death, subject to be divested by the exercise of the power.[3] It is equally as clear that the "exercise of the power," in the situations where the question has arisen in Pennsylvania, means its effective exercise to transfer to the appointee the property which is the subject matter of the power. If the reason for the ineffective exercise is due to the donee, as for example, when he exceeds the authority granted, there is no doubt that the property passes to the legatees named in default of exercise of the power.[4] And a Pennsylvania court has held that if the attempted appointment fails because of the death of some of the appointees during the donee's lifetime, the default legatees take the shares of the deceased appointees if those shares would otherwise lapse.[5] On the basis of analogous case authority and the underlying principle that the default legatees have the vested interest subject to its divestment by the effective exercise of the power, we think the controlling question is whether or not the property has passed under the power. If it has not passed, for whatever reason, then it seems to us to follow that the interest of the default legatees has not been divested.[6]

---

[1] The Revenue Act of 1942, § 403(a), amends § 811(f) by imposing an estate tax upon the possession of a power of appointment. The Cardeza estate antedates the amendment.

[2] In this case all the relevant factors are found in Pennsylvania. We do not, therefore, face the problems which arise when land and movable property in a number of states are involved. See Restatement, Conflict of Laws, §§ 234, 249, 251, 284(2), 306, 308 (1934).

[3] In re Freeman's Estate, 1908, 35 Pa. Super. 185, approved by the Supreme Court of Pennsylvania in 1924, 281 Pa. 190, 126 A. 270 and in 1924, 280 Pa. 273, 124 A. 435; Lewis v. Rothensies, 3 Cir.,

1943, 138 F.2d 129, 132; Lincoln Trust Co. v. Adams, 1919, 107 Misc. 639, 177 N.Y.S. 889; Matter of Lansing, 1905, 182 N.Y. 238, 74 N.E. 882. See also Restatement, Property, § 365(3) (1940); 41 Am. Jur., Powers § 85; 3 Tiffany, Real Prop. § 679, p. 10 (3d ed. 1939).

[4] In re Lewis' Estate, 1944, 349 Pa. 571, 37 A.2d 482. This case concerns a special power of appointment but the principle is the same.

[5] In re Lyndall's Estate, 1893, 2 Pa.Dist. R. 476, 13 Pa.C.C. 449. See also Lincoln Trust Co. v. Adams, 1919, 107 Misc. 639, 177 N.Y.S. 889.

[6] We are not unmindful of the line of authority, principally English, which

 If that interest has not been divested by an effective exercise of the power, then it did not pass as part of Mrs. Cardeza's estate and is not taxable as part of it. That is what the Tax Court held and we agree.

Arguments based upon the supposed intention of the donor of the power in this connection do not seem helpful to us. If he had envisaged this particular situation he would doubtless have provided for it in his very elaborate and detailed will. It seems to us that giving effect to the provision he made for a gift over in default of appointment comes as close to what his intention would probably have been as any other solution that could be suggested. Furthermore, in this connection, we are not a common law court making a rule for construction of wills. We are seeking to find and apply Pennsylvania law to a property question. Upon the answer to that question the taxation of the transfer of a portion of this estate can be determined. We think we have given the answer as a Pennsylvania Court would give it.

---

treats the subject matter of an ineffectively exercised power as part of the donee's estate for purposes of devolution. Re Marten [1902] 1 Ch. 314; Note, 93 A.L.R. 967 (1934). Without an extended discussion of the merits of that view, it is sufficient to say that we think that

Pennsylvania law is opposed to it. Moreover, the Commissioner's contention here is not that Mrs. Cardeza exercised dominion over the property so as to bring it into her estate, but rather that she caused an intestacy in her father's estate which brought the property to her by descent.