**ESTATE OF Charlotte D. M. CARDEZA, Deceased.**

**FIDELITY–PHILADELPHIA TRUST COMPANY, Executor, Appellant in No. 12569,**

v.

**UNITED STATES of America, Appellant in No. 12570.**

**Nos. 12569, 12570.**

United States Court of Appeals Third Circuit.

Argued Sept. 16, 1958.

Decided Nov. 14, 1958.

**424**

Helen A. Buckley, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for United States.

Robert R. Batt, Philadelphia, Pa. (William R. Spofford, Charles S. Jacobs, Robert R. Batt, J. Harry Wagner, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for Fidelity-Philadelphia Trust Co.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

These appeals present another aspect of the litigation regarding the taxes paid by the Cardeza Estate. The decedent, during her lifetime, transferred a substantial amount of money to a trust established by the will of her father. The decedent's children and their issue were the primary beneficiaries of one-third of this trust. However, if the decedent survived all her children and their issue she became entitled to the income of that share for life with a testamentary power of appointment over the corpus.

In an earlier opinion, Cardeza's Estate v. C. I. R., 1949, 173 F.2d 19, 9 A.L.R.2d 1368, this court held, inter alia, that the decedent's contributions to the share of the trust here involved were includible in her estate as a transfer in contemplation of or intended to take effect in possession or enjoyment at or after death, within the meaning of Section 811(c) of the Internal Revenue Code of 1939. Under that section property thus transferred was includible in the transferor's gross estate regardless of the value of the reversionary interest.

Subsequent to our decision, Congress enacted the Technical Changes Act of 1949, 63 Stat. 891. Section 7(a) of the Act amended Section 811(c) of the Internal Revenue Code of 1939 to provide special tax treatment for a limited class of property transferred on or before October 7, 1949.[1] Where the transfer was

---

1. The pertinent part of § 811(c) of the Internal Revenue Code of 1939, as amended by the Technical Changes Act of 1949, is as follows:

"(2) Transfers taking effect at death— transfers prior to October 8, 1949. An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term 'reversionary interest' includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate." 26 U.S.C.A. (I.R.C.1939) § 811(c) (2).

intended to take effect in possession or enjoyment at or after the transferor's death, the property would not be includible in the gross estate unless the transferor retained an express reversionary interest, *the value of which immediately prior to his death exceeded 5 per cent of the value of the property transferred.* Relying upon Section 811(c), as so amended, taxpayer filed a claim for refund with the Commissioner of Internal Revenue. The claim was disallowed by the Commissioner and taxpayer commenced this suit for refund.

The taxpayer moved for summary judgment, which motion was granted by the district court. Judgment was entered in favor of the taxpayer in the amount claimed with interest at 6 per cent computed from the date of the payment of the tax. On appeal by the government, this court vacated the judgment and remanded the cause to the district court for further proceedings.[2] The taxpayer renewed its motion for summary judgment. The district court thereupon entered judgment for the taxpayer without interest on the overpayment and rendered an additional opinion explaining the denial of interest.[3]

These cross appeals followed. Taxpayer's appeal relates solely to the disallowance of interest on the overpayment. The government contends that the district court erred in holding that a reversionary interest such as this is not susceptible of valuation in accordance with "usual methods * * * including the use of tables of mortality and actuarial principles."

Section 7(a) of the Technical Changes Act provides that the value of the reversionary interest is to be determined "by usual methods of valuation, including the use of tables of mortality and actuarial principles." The Conference Committee Report explains the intention

of Congress even more clearly when it states:

"The rule of Robinette v. Helvering (318 U.S. 184 [63 S.Ct. 540, 87 L.Ed. 700]), under which a reversionary interest not having an ascertainable value under recognized valuation principles is considered to have a value of zero, is to apply." [4]

A regulation issued by the Commissioner of Internal Revenue is substantially similar in portent.[5]

Robinette v. Helvering, 1943, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700, concerned the valuation of a contingent reversionary remainder dependent upon survivorship by the grantor of her daughter without issue who should reach the age of 21 years. The Court concluded, 318 U.S. at page 189, 63 S.Ct. at page 542, that the

"Actuarial science may have made great strides in appraising the value of that which seems to be unappraisable, but we have no reason to believe from this record that even the actuarial art could do more than guess at the value here in question."

Appended to the government's opposition to taxpayer's motion for summary judgment in the district court was an affidavit of an actuary. The actuary, purportedly utilizing the latest actuarial tables and approved actuarial principles, fixed an "at least" valuation on the reversionary interest retained by the decedent of 7.976 per cent of the value of the estate. The government here contends that by this affidavit there arose a question of fact which had to be resolved by trial and thus necessarily precluded the district court from entering summary judgment. It, however, fails to recognize that for the purpose of passing upon the motion for summary judgment the district court considered the opinion of

---

2. Subsequent to its appeal, the government filed a motion to amend the judgment. In order to allow the district court an opportunity to pass upon the motion, this court took the indicated action.

3. Neither of the district court's opinions are officially reported.

4. 1949 U.S.Code Cong.Serv. p. 2186.

5. 26 Code Fed.Regs. § 81.17.

the actuary contained in the affidavit and concluded that no weight could be given to it for the reasons set forth in its opinion. This is made clear by the district court in its opinion wherein it states:

"Thus the taxpayer must demonstrate to the court's satisfaction that the best that the actuarial art can do toward establishing the value of the reversion is no more than a guess, but if he can do that by the admitted facts and the *defendant's evidence,* he need not produce evidence and is entitled to judgment." (Emphasis supplied.)

The government maintains that its actuary in arriving at his conclusion resolved every possible doubt in favor of decedent—specifically, (1) the conclusion is based on tables indicating birth statistics for all fathers aged 55 years or over (decedent's son, Thomas, was 64 years old on the date of decedent's death); (2) no regard was given in the tables to the age of the wives of the "over 55" fathers (Thomas' wife was 59 years old at decedent's death); (3) it was assumed that no father had more than one child; and, lastly (4) it was assumed that all births reported were to married fathers. However, in none of. these assumptions has the government attempted to adjust its figures to indicate what the procreative figures would be for 64-year-old men with the decided inducement to have progeny that was present in the instant case.[6] In regard to this aspect of the case, the district court aptly stated:

"Granted that the mere fact that an act is voluntary does not defeat the possibility of determining statistically the probability of its occurrence, yet, where inducements of widely varying potency and rewards of widely varying attractiveness are offered to people of widely varying personalities, it is manifestly impossible to arrive at a statistical analysis sufficiently accurate to permit of any intelligent valuation of reversion. Nor, in the nature of things, is any advance in the actuarial art conceivable which would meet the difficulty."

This conclusion is in accordance with our earlier opinion involving this estate, Commissioner of Internal Revenue v. Cardeza's Estate, supra, where, relying upon Robinette v. Helvering, supra, we held that the value of the intestate interest[7] was not susceptible of valuation since it was contingent upon Thomas dying without issue and any attempt at valuation would be no more than a guess.

■ The Supreme Court had occasion to consider the ability of the actuarial art to value a bequest conditioned upon the failure of issue in Commissioner of Internal Revenue v. Sternberger's Estate, 1955, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246, and held that the art was incapable of doing so. Although the government attempts to distinguish the case as turning upon another issue, the Court of Appeals for the First Circuit has not so construed it. In United States v. Dean, 1 Cir., 1955, 224 F.2d 26, 28 it stated:

"But [the Supreme Court] did not rest its reversal on the broad proposition that charitable bequests which at the decedent's death are not assured but are in fact conditional are never deductible. *It rested its reversal on the ground that*

imponderables which make of the actuarial conclusion pure speculation.

6. There may be many motivations for the volitional act on the part of the life tenant that would defeat the contingent remainder. The cases in the body of the opinion refer only to the desire of the life tenant to retain in his line the corpus of the estate. A stronger motivation, perhaps, might be ill-feeling existing between the life tenant and the remainder-man. Such motivations are, of course,

7. Upon the death of Thomas, without children, the entire corpus would revert to the estate of decedent's father and pass by intestacy to decedent's estate. See Commissioner of Internal Revenue v. Cardeza's Estate, 3 Cir., 1949, 173 F.2d 19, 24.

*the actuarial art was unable to cope with the contingency of that particular case.* The Court called attention to the fact that the bequest it was considering 'offers to the daughter an inducement of about $2,000,000 to remarry and leave a descendant', and noted that such an inducement would render quite undependable the actuarially computed average probability that a 27-year-old woman would have issue. It then based its reversal on the authority of Humes v. United States, 1928, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed 667, in which it was held that no charitable deduction could be taken under § 403(a) (3) of the Revenue Act of 1918 on account of a bequest to charity conditioned on the death of the decedent's 15-year-old niece without issue before reaching the age of 40, because there was no reliable statistical data from which the chance that the charity would take could be actuarially computed." (Emphasis supplied.)

We agree with this interpretation of the Sternberger opinion and find it to be in accord with the principle set forth in Robinette v. Helvering.[8] Since Congress referred to the Robinette case in enacting the Technical Changes Act of 1949 and indicated that it was to be followed in similar cases, we are clear that, as a matter of law, the value of a reversion dependent upon failure of issue is incapable of ascertainment "by usual methods of valuation * * *."

The cases cited by the government are distinguishable inasmuch as they only concern interests subject to defeasance upon remarriage. Brotherhood of Locomotive Firemen v. Pinkston, 1934, 293 U.S. 96, 55 S.Ct. 1, 79 L.Ed. 219; Commissioner of Internal Revenue v. State Street Trust Co., 1 Cir., 1942, 128 F.2d

618, 142 A.L.R. 943; and Commissioner of Internal Revenue v. Maresi, 2 Cir., 1946, 156 F.2d 929. None of these cases are concerned with the valuation of interests conditioned upon the failure of issue in which an inducement to procreate was present. As the district court concluded:

"In such cases the figures supporting the probability of remarriage in the whole population would naturally show a higher probability of remarriage than in a case in which remarriage would lead to the loss of income, and any error in the actuarial result would be on the safe side. On the other hand, in the cases cited by the taxpayer, as well as in the present case, there was a decided inducement to remarry so that the life tenant could leave a descendant. This would tend to make the actuarial figures too low to apply to any case where such inducement existed, but no statistics can possibly even approximate how much too low. If the actuarial estimates of the probability of remarriage are too low, then the estimate of the value of the reversion must be too high, but again there is no possibility of saying how much too high."

In a case such as this we are convinced that any actuarial conclusion would be nothing but a guess. It is clear, therefore, that under Section 811 (c) of the Internal Revenue Code of 1939, as amended, the reversionary interest must be considered to have a valuation of zero.

The thrust of taxpayer's appeal is that the only provision specifically dealing with the allowability of interest on judgments in tax refund suits is contained in Section 2411(a) of the Judicial Code.[9] That being the case, tax-

---

8. Humes v. United States, 1928, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667, was relied upon in both the Robinette and Sternberger opinions. Sternberger, in addition, cited Robinette with approval.

9. "§ 2411. Interest
"(a) In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy col-

payer contends that the district court erred in disallowing interest on the over-payment of tax. Taxpayer recognizes that Section 7(b) of the Technical Changes Act of 1949, 26 U.S.C.A. § 811 note states that "No interest shall be allowed or paid on any overpayment resulting from the application of subsection [7](a) with respect to any payment made prior to the date of the enactment of this Act." Although it is Section 7(a) under which taxpayer seeks to obtain its refund, it contends that Section 7(b) was merely intended to restrict the right to interest on refunds *allowed* by the Commissioner of Internal Revenue and not to prohibit interest on judgments obtained following denials of refunds. The short answer to taxpayer's contention is to be found in Section 7(b) itself, for no limitation upon the clear, all-inclusive language is contained therein.

The general introductory statement of the Senate Report on H.R. 5268, which ultimately was enacted as the Technical Changes Act of 1949, indicates that the legislation was remedial in nature, designed to "remove certain inequities or hardships in the present Federal tax laws." U.S.Code Cong.Service 1949, p. 2173. This fact alone clearly distinguishes the present case from the two cases cited by taxpayer as supporting its position. Carter v. Liquid Carbonic Pacific Corp., 9 Cir., 1938, 97 F.2d 1; and General Motors Corp., Frigidaire Div. v. United States, 146 F.Supp. 220 (Ct.Cl.1956). The former case dealt with taxes that had been illegally assessed and collected and the latter with expenditures which had been erroneously disallowed. Our earlier opinion is conclusive of the legality of the original assessment by the Commissioner and,

therefore, only by virtue of this remedial legislation does taxpayer contend any right to return of the overpayment.

The judgment of the district court will be affirmed.

lector, or the personal representative in case of death) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the rate of 6 per centum per annum upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue. The Commissioner is authorized to tender by check payment of any such judgment, with interest as herein provided, at any time after such judgment becomes final, whether or not a claim for such payment has been duly filed, and such tender shall stop the running of inerest, whether or not such refund check is accepted by the judgment creditor." 28 U.S.C.A. § 2411.