BANKERS TRUST COMPANY and Leonard M. Wallstein as Executors of the Will of Charles Newman, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.

Dec. 29, 1960.

For Supplemental opinion. See 191 F.Supp. 792.

Wallstein, Menschel & Wallstein, New York City, for plaintiffs; Leonard M. Wallstein, Benjamin Menschel and Leonard M. Wallstein, Jr., New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty. for Southern Dist. of New York, New York City, for defendant; Lola S. Lea, Asst. U. S. Atty., New York City, of counsel.

PALMIERI, District Judge.

In this action brought by the executors of the estate of Charles Newman, a refund of a portion of the estate tax heretofore paid is sought upon the ground that the Commissioner erroneously disallowed a claimed deduction for the present value of a trust remainder to charity. Both sides have moved for summary judgment.

The Undisputed Historic Facts

Charles Newman died on October 26, 1950. During his lifetime he established a trust providing that, upon his death, the income thereof was to be paid to Anne Marie Hughes and, upon her death, the principal thereof was to be distributed "to and among the issue of said Anne Marie Hughes, her surviving." In default of such issue the principal was to be paid to a charitable foundation, bequests to which, in accordance with the Commissioner's ruling, are exempt from federal taxation.

██ Anne Marie Hughes had been Charles Newman's devoted private secretary for the thirty years preceding his death. At the date of his death she was 47 years of age, had been married for 17 years and was childless.[1] Upon

---

1. Mrs. Hughes has remained childless. Her husband died in 1958 and she has not remarried. However, for purposes of this decision, I cannot look beyond the

the taking of her deposition, Mrs. Hughes stated that on October 26, 1950 neither she nor her husband was aware of any physical impediment which might have prevented her from bearing children.[2]

Because the trust was revocable, the full principal, aggregating $83,114.36,[3] was included in Charles Newman's gross estate. The full principal was also included in the net estate subject to taxation since the Commissioner disallowed the deduction for the remainder to charity originally itemized in the estate tax return. Asserting that the charitable remainder was a deductible item and that its present value on the date of Charles Newman's death was $37,384.38, the portion of the estate tax allocable to which

was $15,107.21, plaintiffs duly filed a claim for refund. Following the Commissioner's rejection of the administrative claim, plaintiffs instituted this action.[4]

### The Question Presented

Plaintiffs base their right to the claimed deduction upon section 812(d) of the Internal Revenue Code of 1939 and the regulations thereunder. Section 812(d) permits as a deduction from the value of the gross estate the amount of all transfers to charitable uses.[5] As specified in section 81.44(d) of Treasury Regulations 105, "if a trust is created for both a charitable and a private purpose," a deduction may be taken only insofar as the interest in favor of the

situation which existed at the death of Charles Newman. See Henslee v. Union Planters National Bank & Trust Co., 1949, 335 U.S. 595, 69 S.Ct. 290, 293, 93 L.Ed. 259, where the Court stated:

"The charitable deduction is a matter of congressional grace, and it is for Congress to determine the advisibility of permitting amendment of estate tax returns at such time as the probable vesting of the charitable interest has reduced itself to unalterable fact."

2. The following excerpts from the deposition of Mrs. Anne Marie Hughes, taken on August 9, 1960, are relevant:

*Questions posed by the Government:*

"Q. Prior to October 26, 1950, did you, if you know, experience menopause? A. No.

"Q. Do you know of any physical reason which would have prevented you or your husband from having children? A. No.

"Q. Did you refrain from having children prior to October 26, 1950 as a matter of choice? A. No.

"Q. It was not as a matter of choice? A. No.

"Q. Do you recall having a telephone conversation with a Mr. Ward of this office in June, 1959? A. Yes.

"Q. Do you recall telling Mr. Ward that the reason that you had not had children was because you were very devoted to Mr. Newman, your employer and did not want to leave him. A. Not in so many words—yes, that was the substance of my statement.

"Q. And was that the situation? A. Yes and no."

*Questions posed by plaintiffs' counsel:*

"Q. * * * Is it that you don't know whether you went through menopause, or you know that you did not? A. I probably don't know.

"Q. Does that situation prevail at the present time? A. Yes, it does.

"Q. Then you don't know what the situation was then or up to date? A. Yes, that's right."

3. The corpus established *inter vivos* was valued at $37,116.48. A bequest of $46,000 was added thereto in accordance with the provisions of a codicil to Charles Newman's will.

4. The deficiency assessed by the Collector was paid by plaintiffs in May, 1952, less than four and a half months after the return was filed. In January, 1955 a claim for refund was duly filed. Notice of disallowance was mailed to plaintiffs on July 14, 1955 and on July 8, 1957 this action was commenced.

5. Internal Revenue Code of 1939:

"§ 812. Net estate

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate— * * *

"(d) Transfers for public, charitable, and religious uses.

"The amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *"
26 U.S.C.A. § 812(d).

charitable purpose "is presently ascertainable."[6] Where, as here, the transfer to charity is conditional in form, the Regulations, in section 81.46(a), go on to provide that "no deduction is allowable unless the possibility that the charity will not take is so remote as to be negligible."[7] Thus, the question presented is whether, at the date of Charles Newman's death, the remainder to charity, conditioned upon the survival of issue of Anne Marie Hughes, then age 47, married 17 years and childless, had a "presently ascertainable" value and was sufficiently certain to be enjoyed by the charity.

The affirmative answer of the plaintiffs is supported by affidavits of medical and actuarial experts tending to show the remote "statistical probability" of a first birth to a white American married female, living with her husband, at age 47.[8] The Government's conclusion that the remainder interest was too remote at the time of Charles Newman's death to qualify for the deduction rests on two propositions: first, the presumption that Mrs. Hughes was physically capable of bearing children was not rebutted by medical evidence;[9] second, the charity's chance of enjoying the remainder could not be determined with a sufficient degree of reliability since actuarial estimates as to the occurrence of the contingency, birth of issue to the life tenant, failed to account for a peculiarly indi-

---

6. U.S.Treas. Reg. 105, § 81.44 (1944) provides:
   "Transfers for public, charitable, religious, etc., uses. * * * (d) If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use.

7. U.S.Treas. Reg. 105, § 81.46 (1942) provides:
   "Conditional bequests. (a) If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable."

8. The following statistical analysis appears in the affidavits prepared by professional actuaries and submitted by plaintiffs:

"1. Number of white females aged 47, married with husband present, 1950 — 608,250
2. Proportion of married females aged 45–49, husband present, with no children ever born, 1950 — .197
3. Estimated number of white females aged 47, married with husband present, with no children ever born, i.e., (1) x (2) — 119,825
4. First births, white women, aged 47 and over—

| | |
|---|---|
| 1949 | 65 |
| 1950 | 49 |
| 1951 | 50 |
| Average | 55 |

5. Probability that a white woman aged 47 married with husband present, will ever bear a child, i.e., (4) ÷ (3) — .00046 "

The foregoing statistics were obtained from the following sources:
Line 1—Bureau of Census, "1950 Census," Special Report P–E, No. 2D, table 5.
Line 2—Bureau of Census, "Current Population Reports," Series P–20, No. 84, p. 8, table 2.
Line 4—National Office of Vital Statistics, "Vital Statistics of the United States," 1949, Vol. II, p. 165; 1950 Vol. II, p. 274; 1951, Vol. I, p. 268.

9. See United States v. Provident Trust Co., 1934, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (presumption is rebutted by evidence that woman's procreative organs were removed by surgical operation) ; City Bank Farmers' Trust Co. v. United States, 2 Cir., 1935, 74 F.2d 692 (age 59); Ninth Bank & Trust Co. v. United States, D.C.E.D.Pa.1936, 15 F.Supp. 951 (ages 57, 63, 67); Rev.Rul. 59–143, 1959–1 Cum.Bull. 247 (ages 55 and 59) (presumption is rebutted where woman is beyond the age of any reasonable likelihood of childbirth).

vidual factor—the exercise of volition on the part of Mrs. Hughes.

Neither party has argued that the question is one of valuation. Cf. Commissioner of Internal Revenue v. Maresi, 2 Cir., 1946, 156 F.2d 929. In this respect, I agree with the position shared by the parties that in Commissioner of Internal Revenue v. Sternberger's Estate, 1954, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246, 55 Colum.L.Rev. 924 (1955), the Supreme Court excluded as a possible approach fragmentation of the claimed deduction to reflect the chance that the charity might not enjoy the remainder interest. Stating that it found "no statutory authority for the deduction from a gross estate of any percentage of a conditional bequest to charity where there is no assurance that charity will receive the bequest or some determinable part of it," 348 U.S. at page 199, 75 S.Ct. at page 235, the Court indicated that an "all or nothing" approach must be taken.[10] I am, therefore, faced with the necessity of placing this case on one side of the line or the other.

### The Relevant Factors

In the absence of evidence to the contrary and in view of the testimony given by Mrs. Hughes upon the taking of her deposition,[11] I must assume that on October 26, 1950, the contingency which could defeat the charitable remainder was a physical possibility. See United States v. Provident Trust Co., 1934, 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793. However, plaintiffs' failure to rebut the existence of the bare physical possibility of issue is not necessarily fatal to their claim. For, under the applicable Regulations,[12] the test is whether the possibility, assuming that it did exist, was "so remote as to be negligible." See City Bank Farmers' Trust Co. v. United States, 2 Cir., 1935, 74 F.2d 692; Rev. Rule 59–143, 1959–1 Cum.Bull. 247; cf. note 15, infra, and text thereat.

Both the Commissioner in Rev.Rule 59–143 and the Court of Appeals for this Circuit in City Bank Farmers' Trust Co. v. United States, supra, relied upon data reported in Bureau of Census publications rather than direct medical evidence in determining whether the contingency of a first birth was "so remote as to be negligible." Cf. Commissioner of Internal Revenue v. Sternberger's Estate, supra, 348 U.S. at page 196, note 8, 75 S.Ct. at page 234. The Second Circuit had before it a bequest conditioned upon the failure of issue of a female life tenant who was 59 and had never had a child up to the date of the testator's death. The Revenue Ruling dealt with a bequest in default of issue of decedent's daughters whose ages were 55 and 59 years, respectively, at the time of decedent's death. Significantly, the Department of Commerce statistics showed no recorded births to women of 55 years and over.[13]

It is illuminating to contrast with these cases the situation presented in In re Cardeza's Estate, 3 Cir., 1958, 261 F.2d 423. There, a reversion was contingent upon the failure of issue of decedent's 64 year old son. Under the applicable code section,[14] the property was

---

10. The Court of Appeals for the First Circuit, commenting upon the holding in Sternberger, stated, "The [Supreme] Court construed § 81.46 * * * as taking not a proportional but an all or nothing approach to the problem of deductions on account of contingent bequests to charity." United States v. Dean, 1955, 224 F.2d 26, 28–29.

11. See note 2, supra.

12. See note 7, supra.

13. In City Bank Farmers' Trust Co. v. United States, supra, Judge Augustus Hand observed:

"[T]he medical books contain a trifling number of cases * * * where women 59 years of age and over have borne children. But, since verification of offspring to women of 55 years and over began to be attempted by the United States Department of Commerce, there have been from the years 1923 to 1932, inclusive, no recorded births to such women." 74 F.2d at page 693.

14. Internal Revenue Code of 1939, § 811 (c), as amended by the Technical Change Act of 1949, 26 U.S.C.A. § 811(c).

to be included in the decedent's gross estate if the value of the reversion exceeded 5 per cent of the value of the property. Accordingly, the Government attempted to use birth statistics for fathers aged 55 and over to establish that the reversionary interest retained by the decedent was "at least" 7.976 per cent of the value of the property. No medical evidence was offered as to the 64 year old son's capacity to procreate. Because of the volitional element and the monetary benefit attendant upon the birth of issue, the Third Circuit rejected the statistical analysis as an insufficient basis upon which to rest a conclusion that the reversion exceeded 5 per cent. Ruling in favor of the taxpayer's contention that the volitional element rendered the Government's actuarial computations an unreliable guide, the Court stated:

"[T]he government [has not] attempted to adjust its figures to indicate what the procreative figures would be for 64-year-old men with the decided inducement to have progeny that was present in the instant case." 261 F.2d at page 426.

"In a case such as this we are convinced that any actuarial conclusion would be nothing but a guess." 261 F.2d at page 427.

The Court of Appeals for the First Circuit has indicated that it would take a similar position on the question of "issue" and the possible exercise of volition by the life tenant. See United States v. Dean, 1955, 224 F.2d 26, 28. Both courts appeared to extract from the Supreme Court's discussion of the Regulations in Commissioner of Internal Revenue v. Sternberger's Estate, supra, the principle of general application that deduction is appropriate where the charity "is sure to take" but not when "the condition is such that the charity may not take at all." See Griswold, Cases and Materials on Federal Taxation 856–57 (4th ed. 1955).

In Sternberger, it was conceded that the claimed deduction could not be taken under section 81.46(a) since the possibility of the birth of issue to the 27 year old life tenant was not a remote contingency. However, it was urged that a portion of the remainder could be deducted under section 81.44(d) and that actuarial computations could be used to determine the present value of the chance that the charity would take. In rejecting this contention the Supreme Court held that unless the requirements of both sections of the Regulations are satisfied, no deduction may be taken for a conditional bequest to charity. See 55 Colum.L.Rev. 924, 925 (1955). With respect to section, 81.46(a), the Court stated:

"The predecessor of § 81.46 confined charitable deductions to outright, unconditional bequests to charity. It expressly excluded deductions for * * * bequests that might never reach charity. *Subsequent amendments have clarified and not changed that principle.* Section 81.46(a) today yields to no condition unless the possibility that charity will not take is 'negligible' or 'highly improbable.' " 348 U.S. at page 194, 75 S.Ct. at page 233. (Emphasis added.)

I am also mindful of the approach taken by the Supreme Court in the related area of bequests of remainder interests to charity where the granting instrument authorizes invasion of corpus for the comfort, maintenance and support of the life beneficiary. In this class of cases no deduction is permitted unless "the probability of invasion is remote or the extent of the invasion is calculable in accordance with some ascertainable standard." Rev.Rul. 54–285, 1954–2 Cum.Bull. 302. Where the granting instruments did not limit corpus disbursements in accordance with a ready standard, the Court has denied deductions as failing to meet the requirement of section 81.44(d), despite fact patterns which made it extremely unlikely that any corpus invasion would occur. For example, in ruling against the claimed deduction in Henslee v. Union Planters National Bank & Trust Co., 1949, 335 U.S. 595, 69 S.Ct. 290, 292, 93 L.Ed. 259, where the life beneficiary was 85 at the time of the testator's death and died

**676**

three years later without having requested any corpus invasion in her behalf, the Court observed:

"We do not overlook the unlikelihood that a woman of [the life tenant's] age and circumstances would abandon her customary frugality and squander the decedent's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance."

See also Merchants National Bank v. Commissioner, 1943, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35.

In sum, the expressions of the Supreme Court indicate that the current Regulations do not enlarge to any appreciable extent the situations in which, under the more restrictive language of the earlier Regulations, conditional bequests to charity were permitted.[15] *Compare* Note, 28 Va.L.Rev. 387, 391 (1942) *with* 55 Colum.L.Rev. 924 (1955). With this background in mind, I turn to the question whether plaintiffs have satisfactorily established their contention that the chance that the remainder would not go to charity was so remote as to be insignificant.

At ages 47–54 first births have been recorded in the Bureau of Census statistics. Plaintiffs' affidavits state that in 1949 such births numbered 65; in 1950, 49 and in 1951, 50.[16] The extent to which the factor of individual volition is responsible for this small number of recorded births has not been the subject of statistical measurement.[17] However, it is reasonable to conclude from the available statistics and the information contained in the affidavit of Dr. Alan F. Guttmacher [18] that at age 47, the chance that a woman will bear issue for the first time, thereby defeating a remainder interest which would otherwise go to charity, is limited. Nonetheless, it is impossible to calculate with certainty the extent of that limited chance. Where, as here, there has been no evidence of poor health or incapacity due to surgery or natural causes,[19] the existing precedent indicates that, in the case of a 47 year old woman, statistical data is insufficient to meet the requirement of section 81.46 (a). In other words, under the circumstances presented here, I believe that the judicial interpretations of the Regulations support the administrative practice and compel me to give recognition to the distorting effect upon the statistical data of the volitional element and the possible

---

15. It may be that a situation such as that presented in Hoagland v. Kavanaugh, D.C.E.D.Mich.1941, 36 F.Supp. 875 would bear reexamination in light of the "clarifying amendment." In Hoagland, no deduction was allowed where the life tenant was 45, unmarried, childless, had a critical case of pulmonary tuberculosis and died two months after the testator's death.

16. See note 8, supra.

17. The figures used by plaintiffs' actuaries, see note 8 supra, give no indication of the number of women in the specified class who have physical capacity but have voluntarily refrained from bearing children.

18. This affidavit, submitted by plaintiffs, states, in pertinent part:
"3. During the years 1953 to 1959, inclusive, while I was Director of the Department of Obstetrics and Gynecology at Mt. Sinai Hospital, my department has records of 31,288 consecutive births occurring at the hospital. Such records indicate that among all these there were only three women, 45 years of age, who conceived and gave birth to a viable infant (by viable I mean an infant sufficiently large to have a mathematical chance of survival). Such records disclose no women over 45 years of age who conceived for the first time and gave birth to a viable infant."

19. See note 2, supra.

inducement to have progeny. Accordingly, while I do not reject the statistics offered by plaintiffs as without evidentiary value, I do hold that, in the case of a woman of 47 years, statistical data, without more, is an insufficient basis upon which to support a conclusion that the chance that the charitable remainder would be defeated "was so remote as to be negligible." [20]

In view of my holding with respect to the possibility of bodily issue, it is unnecessary to discuss at length the Government's alternative argument that the possibility of adopted "issue" rules out the claimed deduction. I have examined the relevant New York cases and find that although the law in this area has not been static, the trend discerned by the Government in favor of treating adopted children as issue has not gone far enough to reach the situation presented here, i. e., one in which no child had been adopted at the date of decedent's death. See N.Y.Domestic Relations Law, McKinney's Consol.Laws, c. 14, § 115; Matter of Upjohn's Will, 1952, 304 N.Y. 366, 107 N.E.2d 492; Matter of Day's Trust, 1st Dept. 1960, 10 A.D.2d 220, 198 N.Y.S.2d 760.

The Government's motion for summary judgment is granted; plaintiffs' cross-motion for summary judgment is denied.

So ordered.

**20.** In City Bank Farmers' Trust Co. v. United States, 2 Cir., 1935, 74 F.2d 692, 694, Judge Augustus Hand stated that "the certainty that a woman who has reached 50 years will not bear children is far greater than that which attends most other human affairs and to which rules of law must be made and applied." He expressed the opinion that "if the Commissioner had adopted a regulation whereby a bequest to charity conditioned upon failure of issue to a woman of 50 years of age and upwards would be deductible in determining the net estate subject to taxation, [the court] should deem it entirely reasonable." However, Judge Hand made it clear that the essential rationale of the City Bank Farmers' Trust Co. case is limited to cases where the bequest is conditioned upon the failure of issue to a woman beyond the age of 54. See note 13, supra. He specifically refrained from addressing the question whether, in the absence of a pronouncement by the Commissioner, it would be appropriate for a court to set the line further back. See Moser, Charitable Gifts to Foundations, 13 N.Y.U. Inst.Fed.Tax. 223, 226 (1955).