**CITY BANK FARMERS' TRUST CO. v. UNITED STATES.**

**No. 250.**

Circuit Court of Appeals, Second Circuit.
Jan. 14, 1935.

Martin Conboy, U. S. Atty., of New York City (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., of counsel), for the United States.

Taylor, Blanc, Capron & Marsh, of New York City (Charles Angulo, Walter E. Cooper, and Charles H. Birdsall, all of New York City, of counsel), for plaintiff-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought to recover $4,-683.98 paid by the plaintiff as executor of the will of Theodore B. Allen to a United

States collector of internal revenue for estate taxes, alleged to have been illegally exacted. The testator bequeathed one-fourth of his residuary estate to City Bank Farmers' Trust Company in trust to apply the net income thereof to the use of his daughter, Nettie A. Pitt, during the term of her life and upon her death to pay over the principal of the trust to her then surviving issue per stirpes, and, in default of issue, to the Manhattan Eye, Ear & Throat Hospital, a charitable corporation. The daughter was 59 years of age and had no issue at the time of the testator's death, nor did she have any at the time when the present action was brought.

The Commissioner of Internal Revenue refused to allow the value of the remainder interest in the trust for the life use of Nettie A. Pitt, which passed to the hospital, as a deduction from the gross estate of the testator, and required the executor to pay estate taxes thereon amounting to $4,683.98, which this action was brought to recover. The question before us is whether a deduction of the value of the remainder to charity should have been allowed under section 303 (a) of the Revenue Act of 1924 (26 USCA § 1095 note).

Section 303 (a) (3) of the act (26 USCA § 1095 note) provided that the net estate subject to estate taxes should be determined by deducting from the value of the gross estate "the amount of all bequests * * * for the use of any corporation organized and operated exclusively for * * * charitable * * * purposes. * * *" The Manhattan Eye, Ear & Throat Hospital was such a charitable corporation.

Treasury Regulations 68, art. 47, also provided that:

"Art. 47. *Conditional Bequests.*—When the transfer is dependent upon the performance of some act or the happening of some event, in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed. * * *"

The trial court held that the value of the gift in remainder to the hospital was deductible under section 303 (a) (3) because the bequest was certain to come to it and the contingency upon which the bequest was formally dependent, i. e., the birth of children to a woman 59 years old, could never happen.

It is true that the medical books contain a trifling number of cases, how well authenticated we do not know, where women 59 years of age and over have borne children. But, since verification of offspring to women of 55 years and over began to be attempted by the United States Department of Commerce, there have been from the years 1923 to 1932, inclusive, no recorded births to such women. During that period the total number of births was 20,389,873, without a single child having been born to a woman of 55 years or over. In view of the statistics, we may conclude that the chance that the life tenant here would have issue after the death of the testator was negligible. The risk that the government will lose taxes if we disregard such an impossible contingency as the birth of issue to the life tenant in the present case is nothing like as great as the risk of loss where the estate of a life tenant is valued by mortality tables at less than the actual duration of life and there is an unconditional gift over to charity. If, for example, a life tenant's expectancy is shown by the mortality tables to be twenty years, while the duration of life proves to be forty years, the deduction for charity will be far greater than the facts ultimately justify. Yet a rule based on experience tables is employed upon the theory that under the law of averages a fair adjustment can be had. In the present case every dictate of reason and common sense justifies us in treating the gift to the issue of the life tenant as practically inoperative and the gift over to the hospital as a remainder indefeasibly vested.

Under the circumstances, the value of the bequest to the hospital may fairly be deducted in calculating the net amount of the estate for purposes of taxation. In Ithaca Trust Co. v. United States, 279 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647, the deduction of a charitable bequest in remainder was allowed, though the life tenant had the right to receive the income and, if that turned out to be insufficient for her maintenance and support, the principal as well. Though shrinkage of investments or some other untoward happening might so lessen the income that it would become necessary to use the capital, or a part of it, for the support of the beneficiary, such a remote contingency was held not to affect the deductibility of the worth of the remainder, when the income at the time of the testator's death appeared to be ample for the support of the life tenant. In United States v. Provident Trust Co., 291 U. S. 272, 54 S. Ct. 389, 78 L. Ed. 793, the life tenant had been subjected to a surgical operation which made her incapable of bearing children. The court treated the old rule that possibility of issue is never extinct as inapplicable to the situation of a woman physically incapable of having children, and allowed a deduction of the remainder under the statute. The presumption

that there is always a possibility of issue has generally been rigorously applied in cases where the validity of future estates under the rule against perpetuities is involved. But it has often been relaxed where the marketability of a title is in question which has been agreed to be conveyed by all persons having any interest except the issue of a woman past childbearing, or where the distribution of an estate is only prevented by the remote contingency of the birth of children to such a woman. Whether the stiff rule of Lord Coke will be applied in the future in cases where, in view of present scientific knowledge, it can have no foundation, we need not say. We find no authorities which require such a fantastic presumption of law to be applied in matters of taxation, where a bequest to a charitable corporation is subject to no doubt or contingency but is by all rules of experience and science bound to occur.

In Farrington v. Commissioner, 30 F. (2d) 915, 67 A. L. R. 535 (C. C. A. 1), the deduction of a charitable remainder was denied because it might be defeated by birth of issue to a life tenant who was 52 years of age. But there there was a strong dissent by Judge George W. Anderson and the statistics show that in the case of a woman between 50-54 years of age there is the slight chance of .0001 that she may have children. Therefore, while it is not necessary to say that possibility of issue must be treated as extinct among women between 50 and 54 years of age, it seems clear that those beyond the latter age are to be regarded as wholly past childbearing. Indeed, if the Commissioner had adopted a regulation whereby a bequest to charity conditioned upon failure of issue to a woman of 50 years of age and upwards would be deductible in determining the net estate subject to taxation, we should deem it entirely reasonable. As was said in Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 212, 50 S. Ct. 98, 100, 74 L. Ed. 371, 65 A. L. R. 1000: "Taxation is an intensely practical matter." The certainty that a woman who has reached 50 years will not bear children is far greater than that which attends most other human affairs and to which rules of law have to be made and applied.

The statement in Hill v. Sangamon Loan & Trust Co., 295 Ill. 619, 622, 129 N. E. 554, 555, that "nature has fixed no certain age, by years, at which child bearing capacity shall

begin or end," is quite unfounded when applied to extremes either way. So far as the present case is concerned, it is abundantly disproved by a wealth of statistics.

The claim that the regulations which we have quoted are of such long standing that they should be read into subsequent taxing statutes will not bear scrutiny. There is no reason to suppose that they were aimed at the old presumption that possibility of issue is never extinct or that such a presumption was ever within the contemplation of the Commissioner. Moreover, it can hardly be reconciled with the language of section 303 (a) (3) providing for the deduction of the amount of "all bequests * * * to * * * any corporation organized and operated exclusively for *' * * charitable * * * purposes. * * *" A bequest to a charitable corporation which must take effect because the alternative gift to the issue of the life tenant cannot occur is an outright and indefeasible conveyance of a remainder interest and comes directly within the terms of the act. The divergence is only formal and without the least essential reality. The same argument that the law would be rendered uncertain, if statistics regarding possibility of issue were considered, was made in United States v. Provident Trust Co., 291 U. S. 272, 54 S. Ct. 389, 78 L. Ed. 793, as the government makes here. There was there a possible uncertainty as to the extent of the surgical operation and its prevention of childbearing. The decision depended on the strength of the proof. The validity of the conclusion rested on testimony as to the condition of the life tenant, rather than on a sweeping rule that required nothing beyond itself. We see no essential difference between the real nature of the facts of that case and those before us here. In each case the conclusion depended on the accuracy of the data and the correctness of the scientific conclusions. Certainty is just about as great in one as in the other. We ought not to make an exemption in aid of charitable gifts depend on considerations that are wholly unreal and illusory.

Judge Patterson allowed the deduction of the value of the remainder interest under the statute for what seems to us unanswerable reasons and directed judgment for a refund of the tax to the plaintiff. We entirely agree with his conclusion, and accordingly affirm the judgment.