EMPIRE TRUST COMPANY, Charlotte Mallory Mixsell, Robert H. Minton and T. Howard Snethen, Executors of the Will of Harold R. Mixsell, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.
Dec. 26, 1963.

Jackson, Nash, Brophy, Barringer & Brooks, New York City, Lawrence P. McGauley, Charles W. Ufford, Jr., of counsel, and Meleney, Dick & Engel, New York City, Clarence C. Meleney, of counsel, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York; Robert Arum, Patricia A. Garfinkel, Asst. U. S. Attys., of counsel, for defendant.

LEVET, District Judge.

This is a suit for refund of federal estate taxes. This court has jurisdiction of the action under 28 U.S.C. § 1346(a) (1). Plaintiffs, as executors of the estate of Harold R. Mixsell, deceased, bring this action to recover $45,561.61 of estate tax and $4,911.29 of deficiency interest paid by them to the Internal Revenue Service on March 31, 1961. Three separate and distinct issues are raised in this suit for refund. Two of the issues, whether certain gifts were made in contemplation of death and whether the Commissioner erroneously disallowed a charitable deduction arising from a conditional bequest to charity, were tried to a jury. However, the parties have stipulated that the third issue, the amount of the marital deduction, be tried to the court without a jury.

After examining the exhibits, the pleadings, the briefs and stipulations of counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Harold R. Mixsell died a resident of the City, County and State of New York on February 14, 1958. The plaintiffs were appointed executors of the will of Harold R. Mixsell on February 27, 1958 and duly qualified and are now acting as such executors.

2. On May 14, 1959, plaintiffs filed an estate tax return for decedent's estate and paid the District Director of Internal Revenue for the Upper Manhattan District of New York the sum of $135,173.-15, the amount shown by the return to be due and payable. Subsequently, the Director assessed a deficiency of $45,561.61, which amount the executors deposited with interest of $4,911.29, making a total additional payment on account in the amount of $50,472.90. On August 1, 1961, the plaintiffs duly filed a claim for refund, which claim was disallowed on March 19, 1962. Thereafter, this action was instituted on May 24, 1962.

3. The decedent was survived by his wife, Charlotte Mallory Mixsell, and his daughters, Charlotte M. Minton and Mary M. Snethen.

4. Article First of the will provides:

"I direct that my just debts, funeral and administration expenses shall be paid as soon as practicable after my death."

5. Article Fourth in part provides:

"If my wife CHARLOTTE MALLORY MIXSELL shall survive me and my daughter MARY or my daughter MALLORY or any issue of either of them shall also survive me, I give, devise and bequeath unto my said wife absolutely an amount equal to one-half of the value of my adjusted gross taxable estate, as determined for Federal Estate tax purposes, after deducting all debts and funeral and administration expenses, but before deducting Federal and State, estate, inheritance and transfer taxes, less the value, as finally determined for Federal Estate tax purposes, of all property received or receivable by my said wife, in any form or at any time, under any other provisions of my Will or outside of my Will, which is includable in my adjusted gross taxable estate and which qualifies for the marital deduction under the Internal Revenue Code. * * *"

6. Article Twenty-First is as follows:

"I direct that all State and Federal, estate, inheritance, legacy and transfer taxes payable in respect to my gross estate as determined for tax purposes shall be payable out of my residuary estate."

7. Article Fifth sets up a residuary trust, the net income of which is payable to the wife for her life.

8. The executors elected to treat the $25,000 in attorneys' fees and the $30,000 in executors' commissions as income tax deductions pursuant to Section 642(g), Int.Rev.Code of 1954. Therefore, they did not deduct these sums in determining the "adjusted gross taxable estate." Waivers pursuant to Section 642(g) of the Code were filed by the executors with the fiduciary income tax returns for the years in which these expenses were claimed as income tax deductions. (See Ex. 2 and 3)

## DISCUSSION

The issue presented is clearly defined by the contentions of the parties. The executors contend that the effect of electing to claim certain administration expenses (attorneys' fees and executors' commissions) as income tax rather than as estate tax deductions was to increase the estate's adjusted gross estate for federal estate tax purposes. Therefore they contend, that the election served to increase the amount of property passing to the decedent's wife from the decedent and, accordingly, the estate was entitled to an increased marital deduction. The government, on the other hand, does not dispute the fact that the executors' election to claim the administration expenses as income tax deductions rather than estate tax deductions served to increase the estate's total adjusted gross estate for federal estate tax purposes. However, the government contends that the election did not serve to increase the amount actually passing to the widow from the decedent under the express language of Article Fourth of the will since Article Fourth limits the amount of the widow's bequest.

The Commissioner of Internal Revenue rejected the executors' computation of the marital deduction as one-half of the adjusted gross estate determined by excluding certain administration expenses as a result of the executors' election under Section 642(g). The Commissioner redetermined the marital deduction as one-half the amount which the adjusted gross estate would have been had all the assertible deductions been claimed in the estate tax return.

Simply stated, the issue is whether Article Fourth of the will limits the amount the widow takes, and, therefore, limits the marital deduction.

## RELEVANT STATUTES

The essential portions of pertinent statutes affecting this case are as follows:

*26 U.S.C. § 2056:*

"Bequests, etc., to surviving spouse

"(a) Allowance of marital deduction.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"* * *

"(c) Limitation on aggregate of deduction.—

"(1) General rule.—The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2).

"(2) Computation of adjusted gross estate.—

"(A) General rule.—Except as provided in subparagraph (B) of

this paragraph, the adjusted gross estate shall, for purposes of subsection (c) (1), be computed by subtracting from the entire value of the gross estate the aggregate amount of the deductions allowed by sections 2053 and 2054."

*Regulation 20.2056(b)-4(a):*

"Marital deduction; valuation of interest passing to surviving spouse.

"(a) In general. The value, for the purpose of the marital deduction, of any deductible interest which passed from the decedent to the surviving spouse is to be determined as of the date of the decedent's death, except that if the executor elects the alternate valuation method under section 2032 the valuation is to be determined as of the date of the decedent's death but with the adjustment described in paragraph (a) (3) of § 20.2032–1. The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse, the same principles being applicable as if the amount of a gift to the spouse were being determined.
* * * "

*26 U.S.C. § 2053:*

"Expenses, indebtedness, and taxes

"(a) General rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

" * * *

"(2) For administration expenses,

" * * *

"as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

*26 U.S.C. § 642(g):*

"Disallowance of double deductions.—Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction in computing the taxable income of the estate, unless there is filed, within the time and in the manner and form prescribed by the Secretary or his delegate, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054."

■ It is clear that a fair reading of Sections 2056 and 642 indicates that the adjusted gross estate is computed by subtracting from the gross estate the deductions allowable under Sections 2053 and 2054. However, Section 642(g) makes it clear that there can be no double deduction of the deductions allowed by Sections 2053 and 2054.

■ "It is well settled that statutory exemptions from taxes of this kind should be strictly construed against the taxpayer, and are held applicable only to subject matter or beneficiaries clearly within their terms." Shedd's Estate v. Commissioner, 237 F.2d 345, 357 (9 Cir. 1956), cert. denied 352 U.S. 1024, 77 S. Ct. 590, 1 L.Ed.2d 596 (1957). See also Oklahoma Tax Commission v. United States, 319 U.S. 598, 606, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943). Deductions are matters of legislative grace, and one seeking a deduction must show that he comes squarely within the terms of the statute allowing it. Empire Trust Co. v. Commissioner, 94 F.2d 307, 310 (4 Cir. 1938); Wolf v. Commissioner, 264 F.2d 82, 87 (3 Cir. 1959).

It is obvious that if Article Fourth of the will had only provided that the wife was to receive "an amount equal to one-half of the value of my adjusted gross taxable estate, as determined for Federal Estate tax purposes * * * " the amount of the marital deduction would match the amount the executors computed. The government concedes that the election pursuant to Section 642(g)

was proper, that the adjusted gross estate is larger as a result of the election and that a larger marital deduction is available if provided for in the will. Rev. Rul. 55–643, 1955–2 Cum.Bull. 386; Rev. Rul. 55–225, 1955–1 Cum.Bull. 460.

■ In determining the specific legal interest or right of the widow created under the will, resort to the law of the State of New York is necessary. Commissioner v. Ellis' Estate, 252 F.2d 109, 113 (3 Cir. 1958); Hoffman v. McGinnes, 277 F.2d 598, 602, 90 A.L.R.2d 405 (3 Cir. 1960). However, decisions of the state court are not necessarily controlling. Towner v. Commissioner, 182 F.2d 903, 907 (2 Cir. 1950), cert. denied Farrell's Estate v. Commissioner, 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659 (1951).

In the Towner case, supra, involving a question of the deductibility for tax purposes of a note paid by an executor, Clark, Circuit Judge, wrote in part: " * * * As this court recently observed in Lembcke v. United States, 2 Cir., 1950, 181 F.2d 703, a federal court has some freedom to differ with the decision of a single trial judge in a state court at least where we are applying federal legislation rather than exercising diversity jurisdiction." (182 F.2d p. 907)

There are three decisions of the Surrogate's Court, New York County, bearing on this issue. The first is Matter of Levy's Estate, 9 Misc.2d 561, 167 N.Y.S. 2d 16 (Sur.Ct.1957), where the executors made an election pursuant to Section 642 (g). The provision of the will governing the bequest to the wife, however, was not similar to Article Fourth.[1] Surrogate DiFalco held that the amount of property the widow was in fact entitled to receive was to be computed by reducing the adjusted gross estate for federal estate tax purposes by the amount of the administration expenses. The court stated: "In accord with * * * general principles of equity, the executors are directed to credit the principal account with the estate tax saving which the principal would have enjoyed had the administration expenses been deducted from estate corpus rather than estate income." 167 N.Y.S.2d at 18.

In the second case, also involving a will clause dissimilar in effect to Article Fourth and an election pursuant to Section 642(g), Surrogate Cox reached a different result.[2] Matter of Inman's Estate, 22 Misc.2d 573, 196 N.Y.S.2d 369 (Sur.Ct.1959). In Inman, the special guardian, as does the government here, asserted that the wife received only an amount equal to what one-half the adjusted gross estate would have been had all assertible deductions been claimed in the estate tax computation. The Surrogate held:

"The resolution of the issue * * rests upon the intention of the testa-

<hr>

1. The pertinent provisions of the Levy will are as follows:

    "A. I give and bequeath to my wife * * * if she survives me, a sum equal to fifty percent (50%), of the amount by which my gross estate exceeds the aggregate of my debts and funeral and administration expenses * * *.

    "B. For the purposes of this paragraph Second (a) the phrase 'my gross estate' means my total gross estate as computed and finally determined in the Federal Estate Tax proceeding on my estate; (b) the amount of my funeral and administration expenses and debts (including encumbrances and liens upon any property included in my gross estate) shall be as finally allowed in such proceeding; * * *."

2. The pertinent provisions of the Inman will are as follows:

    "If my wife * * *, shall survive me for a period of six months, I give, devise and bequeath to my Trustees, hereinafter named, IN TRUST, nevertheless, for the purposes hereinafter set forth, an amount which shall equal one-half (½) in value of my 'adjusted gross estate,' as that term is defined in Section 812(e) (2) of the United States Internal Revenue Code, as amended, said one-half (½) to be reduced, however, by the aggregate amount of marital deductions, if any, allowed for Federal Estate Tax purposes by reason of property or interest in property passing or which have passed to my said wife otherwise by the terms of this Article SEVENTH of my will."

tor as expressed in his will and the problem is not solved by application of standard accounting practices or, for lack of better reference, by resort to equitable principles to adjust the interests of the parties. Here the intention of the testator is clear. His purpose was to create a trust for his widow in an amount which would result in the greatest tax saving and, consonant with this objective, he planned his will to provide for a maximum marital tax deduction. Although there has been no criticism of the methods employed by the executors in obtaining tax advantages and it is conceded that the elective right exercised by them has resulted in a tax saving without prejudice to the principal of the estate, the objection of the special guardian is a contention that the adjusted gross estate be reduced in amount, the size of the widow's trust be reduced accordingly and, as a consequence, less than the maximum obtainable tax deduction be claimed. Such a result would defeat the testator's plain intent to make substantial provision for his wife and, in so doing, to avail his estate of the fullest tax deduction.

"The testator dictated that the size of the marital trust be determined by reference to the Internal Revenue Code and that the trust be constituted in accordance with the definition of the term 'adjusted gross estate' that is found in the Code. It is accepted in this tax-conscious era that testamentary draftsmen employ definitions found in the tax laws in order to obtain fullest tax benefits and not because of a vocabulary deficiency and it must be recognized that had this testator intended to create a trust of one-half of his residuary estate his resort to a tax law definition would have been pointless. * * * The direction in the will must be given the operative effect which the testator intended and that is that the marital trust be fixed in an amount equal to one-half of the adjusted gross estate determined for tax purposes. * * *" (196 N.Y.S.2d at 371–372)

The third case is in accord with Inman. In Matter of McTarnahan's Estate, 27 Misc.2d 13, 202 N.Y.S.2d 618 (Sur.Ct. 1960), involving a will provision similar to Levy and an election pursuant to Section 642(g),[3] Surrogate DiFalco held that the wife received an amount equal to one-half the adjusted gross estate, excluding expenses claimed as income tax deductions. Apparently, the Surrogate determined that there was no need for an equitable distribution between principal and income of the benefits resulting from the executor's election to deduct expenses from the estate's income.

3. The pertinent provisions of the McTarnahan will are as follows:

"If my wife, * * * survives me for a period of six months, I direct my executors to set apart, but only from testamentary assets included in my gross estate for Federal estate tax purposes or assets received in exchange therefor, owned by me absolutely and completely, and which qualify for marital deduction in determining the Federal estate tax upon my estate, such a fund either in cash or securities, or both, as shall, when added to (1) the aggregate proceeds of all policies of insurance upon my life, which are included in my said gross estate and qualify for said marital deduction and which are payable to my wife, and plus (2) the value of all other property which otherwise passes or has passed from me to my wife, which is included in my said gross estate and qualified for said marital deduction, be equal in value to one-half (½) (or a lesser fraction, if there are insufficient qualifying assets in my testamentary estate) of the value of my entire gross estate for federal estate tax purposes remaining after deducting therefrom all funeral expenses, any allowance granted for support, debts (secured and unsecured), claims and costs of administration, and before deducting therefrom any State or Federal estate, succession, inheritance or transfer taxes; and I give and bequeath such fund so set apart to my wife, to be hers absolutely. * * *"

Although the three cases cited above seem to be in conflict, on closer analysis they are consistent. In Levy and McTarnahan, although the holdings are in direct conflict, the rationale of the decisions are consistent. In both, the Surrogate applied equitable considerations to distribute between principal and income the benefits of the election pursuant to Section 642(g), Int.Rev.Code of 1954. Here, the widow receives the income for life from a residuary trust. Therefore, applying the rationale of Levy and McTarnahan, assuming Article Fourth is similar to the will provisions in Levy and McTarnahan, it is evident that there would be no need for an equitable distribution between principal and income. Applying the rationale of Inman, we would look solely at the intent of the testator as evidenced by the provisions of the will. Here, too, if the present testator had provided solely for an amount equal to one-half the adjusted gross estate as computed for federal estate tax purposes, it is clear that the widow would have received a larger bequest as a result of the election of the executors. However, the difficulty here is that this court cannot agree with the plaintiffs that Article Fourth is to be read as if the words "after deducting all debts and funeral and administration expenses" did not exist.

The bequest is clear. Article Fourth provides a formula by which the amount of the marital bequest is to be determined. In effect, the formula states that X (the amount of the marital deduction) equals ½ AGE (adjusted gross estate as defined in Section 2056, Int.Rev.Code of 1954) minus AE (all administration expenses). The above formula, however, falls short of the maximum marital deduction that was available to the estate. The formula for the maximum marital deduction would be, in effect, M (maximum marital deduction) equals ½ AGE (adjusted gross estate pursuant to Section 2056 Int.Rev.Code of 1954). Thus, Article Fourth clearly and conclusively limits the property passing to the spouse to one-half of the adjusted gross estate

for federal estate tax purposes "after deducting all debts and funeral and administration expenses."

■■ Each will must be construed from its four corners to arrive at the true intention of the testator. Hoffman v. McGinnes, 277 F.2d 598, 602, 90 A.L.R.2d 405 (3 Cir. 1960). As observed by Judge Herlihy in Matter of Gilmour's Estate, 18 A.D.2d 154, 157, 238 N.Y.S.2d 624, 627 (1963):

"In the interpretation of a Will, the intention of the testator, as gathered from the language of the Will, is, of course, controlling. * * 'When the purpose of a testator is reasonably clear by reading his words in their natural and common sense, the courts have not the right to annul or pervert that purpose upon the ground that a consequence of it might not have been thought of or intended by him.' (Matter of Tamargo, 220 N.Y. 225, 228, 115 N.E. 462, 463) '[W]e cannot make a new will, or build up a scheme, for the purpose of carrying out what might be thought was or would be in accordance with his wishes.' (Tilden v. Green, 130 N.Y. 29, 51, 28 N.E. 880, 884, 14 L.R.A. 33.)"

■ Therefore, the intent of the testator, as evidenced by the will, conclusively indicates that the widow was to receive "an amount equal to one-half of the value of my adjusted gross taxable estate after deducting * * * all administration expenses." The fact that the executors elected to deduct administration expenses as income tax rather than estate tax deductions is immaterial since the election does not increase the amount which is to pass to the widow under Article Fourth of the will.

### CONCLUSIONS OF LAW

1. This court has jurisdiction pursuant to 28 U.S.C. § 1346(a) (1).

2. Article Fourth of the will limits the bequest to the widow to an amount equal to one-half the adjusted gross estate less all administration expenses.

This bequest is less than the maximum marital deduction available.

3. The determination of the Commissioner of Internal Revenue as to the formula to be used in determining the marital deduction is correct. Accordingly, the plaintiffs are not entitled to a refund on this issue.

### THE JURY VERDICT

The jury has found that the gift of 1,500 shares of Riegel Paper Corporation stock and an assignment of an insurance policy to the testator's widow were not gifts made in contemplation of death.

The jury has found that the possibility of the testator's daughters having issue as of his death, February 14, 1958, was so remote as to be negligible.

Pursuant to the stipulation of the parties, the estate tax is to be recomputed upon the basis of the above findings.

Settle judgment on notice in accordance with the foregoing.