HAMILTON NATIONAL BANK OF CHATTANOOGA, Executor of the Estate of W. R. Long, Deceased,

v.

UNITED STATES of America.

Civ. A. No. 4136.

United States District Court
E. D. Tennessee, S. D.

Jan. 6, 1965.

Stophel, Caldwell & Heggie, Sizer Chambliss, Chattanooga, Tenn., for plaintiff.

. Robert I. White, Tax Division, U. S. Dept. of Justice, Washington, D. C., J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

FRANK W. WILSON, District Judge.

This case is now before the Court upon a motion by the defendant, United States of America, for a judgment nowithstanding the verdict. The background of the case is as follows: Upon June 24, 1963, the plaintiff, Hamilton National Bank of Chattanooga, Executor of the Estate of W. R. Long, Deceased, filed this action against the United States of America seeking to recover estate taxes in the amount of $257,825.62, plus statutory interest. Jursdiction of the Court was based upon the provisions of Section 1346 (a) (1), Title 28 of the United States Code. A jury was demanded by the plaintiff to try any factual issues presented by the tax litigation as permitted by Section 2402 of Title 28 of the United States Code as amended July 30, 1954.

. The decedent, W. R. Long, Sr., died upon September 13, 1959, leaving a gross estate of approximately $1,660,000. The decedent's will provided that his entire residuary estate be placed in trust and named the plaintiff to serve as executor under the will and as trustee of a trust fund created by the will. Trust provisions in the will provided that the testator's son, W. R. Long, Jr., would receive an income for life and gave to the trus-

tee discretionary power to invade the corpus of the trust for that purpose. Two other persons were named as beneficiaries under the trust. Upon the death of W. R. Long, Jr., the will provided that one-fourth of the residuary trust would go "to the issue of my son, if any, per stirpes" with a contingent interest over to certain charities. The will of W. R. Long, Sr., further provided that after the death of W. R. Long, Jr., the trust would terminate and three-fourths of the residuary trust would go to certain designated charities after retention by the trustee of sufficient amounts of the trust assets to pay the sums specified to the two life recipients.

Upon September 13, 1959, at the death of W. R. Long, Sr., W. R. Long, Jr., was 54 years old and unmarried. He died upon March 10, 1961. The plaintiff filed an estate tax return upon June 13, 1961, which resulted in the assessment of a deficiency against the plaintiff in the sum of $260,944.85. A claim for refund was filed upon November 28, 1962. The difference in the plaintiff and the Commissioner's calculation of the estate tax due upon the estate of W. R. Long, Sr., arose from (1) the plaintiff's use of the period from September 13, 1959, to March 10, 1961, as the actual life expectancy of W. R. Long, Jr., whereas the Commissioner's calculations were based upon a use of actuarial life expectancy under Experience Tables of Mortality; and (2) the plaintiff's calculation was based upon the contingent interest over of one-fourth of the residuary estate to charity as being a charitable deduction whereas the Commissioner calculated the estate tax allowing no deduction for the contingent interest over to charity. No issue exists

with regard to the charities being qualified charities.

At the pre-trial of this case the following were agreed to be the contested issues of fact:

(a) What was the life expectancy of W. R. Long, Jr., on September 13, 1959, (the date of the death of the testator, W. R. Long, Sr.)?

(b) Did W. R. Long, Jr., have "issue" at the time of his death on March 10, 1961?

(c) Was the possibility that W. R. Long, Jr., might have issue after September 13, 1959, so remote as to be negligible?

The defendant filed a motion for summary judgment, contending that there was no genuine issue of fact with regard to the first and the third issues in that there was no competent evidence of life expectancy other than the mortality tables used by the defendant and that there was no competent evidence to overcome the presumption that W. R. Long, Jr., was capable of producing offspring as of the critical date. The motion was overruled and the case went to trial before a jury upon all issues of fact. At the conclusion of the evidence the Court directed a verdict for the plaintiff upon the second issue upon the ground that the only evidence in the record was to the effect that W. R. Long, Jr., never had issue during his lifetime. The jury returned a verdict on special issues [1] finding (1) that the life expectancy of W. R. Long, Jr., as of September 13, 1959, was ten years, and (2) that as of September 13, 1959, the possibility of W. R. Long, Jr., having issue was so remote as to be negligible.

1. (1) We find that the life expectancy of W. R. Long, Jr., as of September 13, 1959, was _____ years. (This may include fractional years, if you so find.)
(2) We find that the possibility of W. R. Long, Jr., having issue (excluding children by adoption) as of September 13, 1959, _____ so remote as
(was — was not)
to be negligible.

(3) We find the possibility of W. R. Long, Jr., having issue (including children by adoption) as of September 13, 1959 _____ so remote as to
(was — was not)
be negligible.

The importance of a determination of these factual issues and their relationship to one another is as follows: The life expectancy of W. R. Long, Jr., a life tenant under the trust, would affect the value of *any* charitable remainder, whether vested or contingent. Thus, a determination of the life expectancy of W. R. Long, Jr., affects the value of the vested charitable remainder as to the three-fourths of the residuary trust which the Government concedes is deductible and the value of the one-fourth charitable remainder subject to the condition of W. R. Long, Jr., dying without issue. The longer the life expectancy, the smaller the deduction and vice-versa. And, as will be more particularly shown, the third issue must be determined before there can be any deduction for the one-fourth remainder bequest to charity.

The statute involved in a determination of the third issue or "issue" issue is Section 2055 Title 26 of the United States Code, which provides in relevant part that:

"(a) *In general.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * * (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private

stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation."

It is undisputed that the charities named in the will of W. R. Long, Sr., are charities and qualify within the meaning of Section 2055.

Treasury Regulations on Estate Tax (1954 Code), Section 20.2055-2, regarding transfers not exclusively for charitable purposes, which was promulgated under Section 2055 of the Internal Revenue Code, provides as follows:

"(a) *Remainder and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest.
\* \* \*

"(b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible." [2]

The Court submitted the "issue" issue to the jury upon instructions as to the negligible possibility rule set forth in paragraph (b) above.[3] The Government

---

2. For the purposes of this opinion the citation to the Treasury Regulations here involved will be as set forth in the opinion. However, for purposes of clarity it should be pointed out that in other case authorities Section 20.2055-2(a) is referred to by its former designation, Section 81.44, and Section 20.2055-2(b) is referred to by its former designation, Section 81.46(a)., e. g., Commissioner v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

3. Turning our attention to the other question in the case, that is, you must decide

whether the possibility of W. R. Long, Jr., having issue as of September 13, 1959, was so remote as to be negligible. Now, the determination of this question is important for the reason that whether or not a charitable deduction will be allowed as respects a portion of the estate depends upon whether or not the possibility of W. R. Long, Jr., having issue as of the date of the father's death, September 13, 1959, was so remote as to be negligible. In other words, if you will recall, a provision of the will was that a certain portion of the estate would

seeks to interpret the regulations here involved, which regulations for the sake of brevity will hereinafter be referred to merely as subparagraphs (a) and (b),

go to the issue of W. R. Long, Jr., if he should have issue. Now, obviously if he had issue, then that portion would go to that issue rather than to the charities, and therefore it creates another problem in trying to place a value on this charitable deduction. Normally, no charitable deduction will be allowed for a conditional bequest to charity, because the determination as to whether a charitable deduction is allowed is made as of the date of the decedent's death. In other words, if as of the date of the decedent's death it is conditional whether or not this money will ever go to charity, then of course such bequest could not be considered as a charitable deduction to that extent. However, if as of the date the bequest is conditional in form only, but the bequest to charity is in fact assured, then a charitable deduction is allowed. Thus, the question that you are called upon to decide is whether or not the possibility of W. R. Long, Jr., having issue was so remote as to be negligible on the date of the death of his father, September 13, 1959. If it was so remote as to be negligible, then this gift to charity was as of that date in fact assured. If it was not so remote as to be negligible, then this gift to charity was a conditional gift and therefore couldn't be considered in determining the amount of the charitable deduction.

Now, the term "issue" as it is used in these instructions means both natural children or children of one's blood, and legally adopted children of W. R. Long, Jr. However, I am going to ask you in returning your verdict to separate those two and determine whether or not the possibility of having issue first on the terms of blood issue was so remote as to be negligible, and then make a separate determination as to whether or not the possibility of having issue including adopted children was so remote as to be negligible.

What is meant by the phrase *possibility which is so remote as to be negligible*? It is, generally speaking, a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction. Empire Trust Co. v. United States, 226 F.Supp. 623. It is likewise a chance which every dictate of reason and common sense would justify an intelligent person in disregarding as so highly improbable and remote as to be ignored as lacking in reason and substance. 291 U.S. 272, 54 S.Ct. 389, 74 F.2d 692.

In determining whether the chance that W. R. Long, Jr., would have issue was so remote as to be negligible, you have a right to consider and weigh, among other relevant matters, the following factors:

(1) The age of W. R. Long, Jr., on the date of his father's death, September 13, 1959, which I believe was 54 years and approximately eight months.

(2) The marital status of W. R. Long, Jr., on the date of and prior to his father's death.

(3) The evidence of physical capacity or incapacity to father children as of September 13, 1959.

(4) The general physical condition of W. R. Long, Jr., upon September 13, 1959.

(5) The statistical evidence offered by the parties which show the number of first births in the United States to men 50–54 years of age, and, to consider any matters which might affect the value of these statistics.

(6) The opinions of experts, if any, as based upon facts which you consider correct. In this connection, you should consider the opinion of experts in the same light as I have previously instructed you. That is, you should consider it to the extent that you feel that on the facts and the evidence it warrants your merit and consideration.

As I have said, your determination of whether or not the possibility of W. R. Long, Jr., fathering a child was so remote as to be negligible must be made as the situation existed on September 13, 1959, because the facts as they existed at that time are the facts upon which we must make this determination of these values. In addition, you cannot assume that he would refrain from marrying or refrain from attempting to have a child, but you may or may not consider a bequest to his issue as an inducement to him to have children. If the possibility of W. R. Long, Jr., having issue was not so remote as to be negligible, you must find on such issue for the Government. If the possibility was so remote as to be negligible, then you should find in favor of the plaintiff. The instructions that I gave you with regard to the burden of proof and with regard to the preponderance of the evidence and the credibility of witnesses would, of course, apply to this issue just as it would to the issue with reference to life expectancy.

as imposing two requirements upon the plaintiff: first, that the plaintiff has the burden of proving that the probability of W. R. Long, Jr., having issue, either by birth or by adoption, was "presently ascertainable" or "precisely predictable," and, second, that the plaintiff has the burden of proving that this "precisely predictable possibility" of having issue was "so remote as to be negligible".

In support of its contention that under subparagraph (a) of the regulation the plaintiff must prove with "precise predictability" the possibility of W. R. Long, Jr., having issue, the Government relies upon the case of Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949), which case in turn relies upon Merchants Nat. Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943). In the Merchants Bank case the testator left his estate in trust for the benefit of his wife during her lifetime and upon her death a portion of the remainder was to go to qualified charities. The trustee was authorized to invade the corpus for the comfort, support, and happiness of the life beneficiary. The Court held that the unlimited right given the trustee to invade the corpus of the estate, since it might exhaust the estate or deplete it to an unknown amount, prevented the charitable remainder from being "presently ascertainable" as required by the treasury regulations, which regulations were held to be valid. The Court there stated:

"For a deduction under § 303(a) (3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 348, 72 L.Ed. 667. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. Cf. Bank of America Nat'l Trust & Savings Ass'n v. Commissioner, 9 Cir., 126 F.2d 48."

In the Henslee case, supra, a similar factual situation existed in which a life beneficiary of a testamentary trust was the 85 year old mother of the testator. The trustee was authorized to invade the corpus for her benefit. The evidence reflected that the estate was sizeable and the income was in excess of the life beneficiary's anticipated needs. The life beneficiary in fact died within three years without any invasion of the corpus. The Court, in following the Merchants Bank case, supra, denied the charitable deduction upon the ground that it was not "presently ascertainable", stating:

"We do not overlook the unlikelihood that a woman of the mother's age and circumstances would abandon her customary frugality and squander her son's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nevertheless be beyond the realm of precise prediction in the single instance. The contingency which would have diminished or destroyed the charitable interest here considered might well have been insured against, but such an arithmetic generalization of experience would not have made this charitable interest 'presently ascertainable.' 'Rough guesses, approximations, or even the relatively accurate valuations on which the

market place might be willing to act are not sufficient.' Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra, 320 U.S. at page 261 [64 S.Ct. at page 111, 88 L.Ed. 35]."

The Henslee and Merchants Bank cases deal specifically with the validity and meaning of the regulation, here cited as subparagraph (a), as it pertains to the situation where the trustee has the unlimited right to invade the corpus of the estate for the benefit of a life beneficiary. No issue was raised in the present case by the Government with respect to the right of the trustee to invade the corpus of the trust for the use of the life tenant.

 While it is true that in the Henslee and Merchants Bank cases the Court spoke of the phrase "presently ascertainable", as applied to the case then before the Court, in terms of meaning "reliably predictable" and "precisely predictable" facts, an interpretation of the regulation requiring that the value of a charitable gift be "presently ascertainable" as meaning "precise predictability" with regard to every condition that might affect the value of a charitable gift, as the Govenment seeks to do here, would, for example, defeat the use of mortality tables in valuation of a charitable gift and would defeat every charitable deduction where a life estate intervenes. Nothing is clearer than that the life expectancy of any particular life is not subject to "precise prediction". Nothing is clearer than that mortality tables are computations of *probabilities* of death at various ages and not "precise predictions" of an individual death. And yet, as will be later noted, the Government advocates the use of mortality tables as the only competent evidence of life expectancy in this case.

 The Court in the Merchants Bank and Henslee cases did refer to the "presently ascertainable" provision of the regulation as requiring "reliably predictable facts" or "precise prediction," as noted in the language quoted above from the opinions. To reconcile this with the

holding of the Court that the regulation was valid as being in accord with the Congressional purpose to encourage charitable bequests, it is apparent that the requirement of "presently ascertainable" or "precise predictability" refers only to matters affecting the *severability* or *division* of the estate between the private purpose and the charitable purpose. The requirement of "presently ascertainable," contained in subparagraph (a) of the regulation, does not relate to *conditions* or *contingencies* which affect the vesting or rendering certain of a charitable remainder, but rather the remainder is governed by subparagraph (b) of the regulation.

This interpretation of the Henslee and the Merchants Bank holdings is supported by the language of the regulation itself, wherein it speaks of the charitable interest being "presently ascertainable and hence *severable* from the non-charitable interest," whereas subparagraph (b) speaks of the negligible possibility test as applying to conditions precedent or "precedent events". It is further supported by the obvious deduction that if subparagraph (a) were to require "precise predictability" of a condition precedent to the vesting or rendering certain of a charitable remainder, such as the survival of issue, then the requirement of "negligible possibility" contained in subparagraph (b) would become largely, if not wholly, redundant. If the survival or non-survival of issue is "precisely predictable" or even "reliably predictable" then it is either clearly possible or clearly impossible, in which event "negligible possibility" becomes meaningless.

██ Finally, the interpretation here made that subparagraphs (a) and (b) apply to different problems in the law of charitable deductions, subparagraph (a) applying to the problem of severance of the charitable interest from the private interest and subparagraph (b) applying to the problem of conditions precedent to the vesting or rendering certain of a charitable remainder, is strengthened by the language of the Court in the case of Commissioner v. Sternberger's Estate,

348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1954), wherein the Court stated:

> "Respondent concedes that the chance that charity will not take is much more than negligible. Therefore, if [subparagraph (b)] applies to the instant case, no charitable deduction is permissible.
>
> "Respondent claims, however, that [subparagraph (a)] covers this case. In doing so it reads [subparagraph (a) and subparagraph (b)] together and, *instead of confining them to their mutually exclusive subjects, makes them overlap.*" (Emphasis supplied.)

Turning now to the contention of the Government as it relates to subparagraph (b) of the regulation, it should be noted that the language "possibility * * * so remote as to be negligible" was first promulgated in the 1939 regulations. Prior to 1939 the only method whereby a charitable deduction would be allowed in the event of a contingent bequest to charity was when the contingency had occurred prior to the critical date.[4] The critical date in the case of a bequest would be as of the date of the testator's death.[5] To be entitled to a charitable deduction prior to 1939 in the case of a transfer to charity subject to a condition, the estate had to prove that it was impossible for the charity not to take. United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934); City Bank Farmers' Trust Co. v. United States, 74 F.2d 692 (C.A. 2d, 1935); Hoagland v. Kavanagh, 36 F.Supp. 875 (D.C.Mich., 1941).

The Government seeks to interpret the regulation here involved, where the test is no longer defined in terms of "impossibility" but rather in terms of being "a possibility * * * so remote as to be negligible" as in fact setting forth one and the same test, it being contended that the "possibility * * * so remote as to be negligible" test is merely the judicial definition of the former term "impossibility". In support of its contention that no change from the former "impossibility" test was in fact accomplished by the 1939 Treasury Regulations (carried forward in the 1954 Treasury Regulations) by use of the phrase "possibility * * * so remote as to be negligible," the Government cites the pre-1939 case of City Bank Farmers' Trust Co. v. United States, 74 F.2d 692 (C.A. 2d, 1935), wherein the "impossibility" test was interpreted as meaning a "negligible" chance of not vesting,[6] and the post-1939 case of Commissioner v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955) where the Court stated that:

> "The predecessor of § 81.46 [i. e., subparagraph (b)] confined charitable deductions to outright, unconditional bequests to charity. It expressly excluded deductions for charitable bequests that were subject to conditions, either precedent or subsequent. While it encouraged assured bequests to charity, it offered no deductions for bequests that might never reach charity. *Subsequent amendments have clarified and not changed that principle.* Section 81.46(a) today yields to no con-

---

4. The wording of Section 20.2055-2(a)'s predecessor was as follows: "Where the bequest, legacy, devise, or gift is dependent upon the performance of some act, or the happening of some event, in order to become effective it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed. Where, by the terms of the bequest, devise or gift, it is subject to be defeated by a subsequent act or event, no deduction will be allowed."

5. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Henslee v. Union Planters' Bank, 335 U.S. 595, 69 S.Ct. 290 (1949); Bankers Trust Co. v. United States, 190 F.Supp. 671 (D.C.N.Y., 1960).

6. The Government also relies in this contention upon United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934) and Ninth Bank and Trust Co. v. United States, 15 F.Supp. 951 (E.D.Pa., 1936).

dition unless the possibility that charity will not take is 'negligible' or 'highly improbable.' " (Emphasis supplied.)

■ In further support of its position in this regard, the Government relies upon the judicially approved presumption that all adult males are capable of producing offspring, United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934), and seeks to contend that this presumption can be refuted only by medical or statistical evidence of sterility, contending that evidence of sterility established by medical or statistical testimony is the *only* judicially approved evidence under the "impossibility" test and its present counterpart, the "negligible possibility" test.

Since the Government relies heavily upon pre-1939 cases to establish the law with regard to the "impossibility" test and relies upon the case of Commissioner v. Sternberger's Estate, supra, to establish its contention that the present "negligible possibility" test is the same as the former "impossibility" test, it is necessary to consider the holding of the Court in the Sternberger case. It should be noted at the outset that the issue of the relationship of the former "impossibility" test to the present "negligible possibility" test was not there before the Court. The relevant facts of the Sternberger case were that the testator had left a remainder interest to charity, contingent upon his 27 year old daughter's dying without issue. *It was conceded by the taxpayer that this bequest did not meet the regulation requiring the possibility of not vesting to be so remote as to be negligible.* The Court of Appeals, affirming the Tax Court, nevertheless allowed a charitable deduction of a *portion* of the charitable bequest, the portion being computed upon an actuarial basis, which took into consideration the odds against the bequest ever going to charity and reduced the charitable bequest accordingly. The Supreme Court, in reversing the Court of Appeals and the Tax Court, upheld the regulation setting forth the "possibility * * * so

remote as to be negligible" test [subparagraph (b)], which would have prohibited the deduction, and held that the "presently ascertainable" requirement of another regulation [subparagraph (a)] did not authorize the deduction. The following statements from the opinion are believed to be significant to the issue now before the Court:

"Here, also, the regulations in their earliest form, in 1919, were unequivocally restrictive. It was only after court decisions had demonstrated the need for doing so that the restrictions were restated so as expressly to permit deductions of bequests assured in fact but conditional in form.

\* \* \* \* \* \*

"Respondent concedes that the chance that charity will not take is much more than negligible. Therefore, if § 81.46(a) [i. e., subparagraph (b)] applies to the instant case, no charitable deduction is permissible.

"Respondent claims, however, that § 81.44 [i. e., subparagraph (a)] covers this case. In doing so it reads §§ 81.44 and 81.46 together and, *instead of confining them to their mutually exclusive subjects, makes them overlap.* \* \* \* In short, respondent claims an immediate tax deduction equal to the present value of whatever fraction of the bequest corresponds, actuarially, to the chance that charity may benefit from it.

\* \* \* \* \* \*

" \* \* \* The allowance of such a tax reduction as is here sought would open a door to easy abuse. The result might well be not so much to encourage gifts inuring to the benefit of charity as to encourage the writing of conditions into bequests which would assure charitable tax deductions without assuring benefits to charity.

\* \* \* \* \* \*

" \* \* \* The additional language in § 81.44(d), quoted above, does

not authorize the deduction, and § 41.46 [i. e., subparagraph (b)] prohibits it. * * *"

This Court does not interpret the Sternberger case as holding that "possibility * * * so remote as to be negligible" is the same as "impossibility". Neither does this Court interpret the pre-1939 cases relied upon by the Government as defining "impossibility" to mean "possibility * * * so remote as to be negligible". While this may have been the interpretation placed upon the cases in drafting the negligible possibility rule and while the isolated word "negligible" was used by the Court in City Bank Farmers' Trust Co. v. United States, 74 F.2d 692 (C.A. 2d, 1935), what each of these cases in fact held was that "impossibility" meant "no practical possibility," as distinguished from "no theoretical possibility". In each case the Court held that under the evidence there presented there was no practical possibility of the life tenant having issue, and the Court concluded that it would not also require proof of a theoretical impossibility, such as excluding the possibility of medical error in a sterility operation or excluding the possibility of a statistical exception in the case of a particular individual. As stated in the case of United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934),

> "Thus stated, the birth of a child to the daughter of the deceased after his death was so plainly impossible that, *as a practical matter*, the hazard disappears from the problem."

As stated by the Court in the case of City Bank Farmers' Trust Co. v. United States, supra,

> "In view of the statistics, we may conclude that the chance that the life tenant here would have issue after the death of the testator was negligible. * * * In the present case every dictate of reason and common sense justifies us in treating the gift to the issue of the life tenant as *practically* inoperative and a gift over to the hospital as a remainder

indefeasibly vested." (Emphasis supplied.)

The third case relied upon by the Government, Ninth Bank and Trust Co. v. United States, D.C., 15 F.Supp. 951 (1936) merely held that the presumption of ability of adult females to bear children may be "made to conform to the *real fact*, by evidence." The case relies precisely upon the City Bank Farmers' Trust Co. case, supra.

Thus, these cases are authority for the proposition that "impossibility" means "no practical possibility" and are not authority for holding that "impossibility" means "negligible possibility". While "impossibility" and "no possibility" may be accurate synonyms, and while "impossibility" and "possibility" may be accurate antonyms, "negligible possibility" is not an accurate synonym or antonym of either. Neither is "negligible possibility" an accurate synonym of "practical impossibility". Thus, in adopting the language "possibility * * so remote as to be negligible" in the 1939 regulations, a judicially established definition of "impossibility" was not adopted as here contended by the Government.

Turning next to the contention of the Government that only evidence of sterility can be used to establish a negligible possibility of issue and that only medical or statistical evidence of sterility may be used to rebut the legal presumption that all adult males are capable of having offspring, the Government relies upon Farrington v. Commissioner, 30 F.2d 915, 67 A.L.R. 535 (C.C.A. 1, 1929); United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (1934); City Bank Farmers' Trust Co. v. United States, 74 F.2d 692 (C.C.A.2d, 1935); Ninth Bank and Trust Co. v. United States, 15 F.Supp. 951 (E.D.Pa., 1936); Hoagland v. Kavanagh, 36 F. Supp. 875 (E.D.Mich., 1941); and Bankers Trust Co. v. United States, 190 F. Supp. 671 (S.D.N.Y., 1960) as authority in support of its contention.

At the outset it should be noted that only the Bankers Trust Co. case, supra,

involved the negligible possibility test, all the other cases relating to the period when the test was impossibility. It should also be noted that at the time of the Provident Trust Co. case, supra, the position of the Government was that the presumption that all adults could have offspring was an irrebuttable presumption, as held by the First Circuit Court in the Farrington case, supra. This position was rejected by the Supreme Court in the Provident Trust Co. case in the following language:

"The sole question to be considered is, What is the value of the interest to be saved from the tax? That is a practical question, not concluded by the presumption invoked, but to be determined by ascertaining in terms of money what the property constituting that interest would bring in the market, subject to such uncertainty as ordinarily attaches to such an inquiry. (Citations omitted.) Thus stated, the birth of a child to the daughter of the deceased after his death was so plainly impossibly that, as a practical matter, the hazard disappears from the problem. Certainly, in the light of our present accurate knowledge in respect of the subject, if the interest had been offered for sale in the open market during the daughter's lifetime, a suggestion of the possibility of such an event would have. been ignored by every intelligent bidder as utterly destitute of reason."

Thus, while the Provident Trust Co. case did hold that the impossibility test might be met by medical evidence of sterility, it did not hold that *only* medical evidence of sterility would suffice. Likewise, the Court in the City Bank Farmers' Trust Co. case, supra, held that statistical evidence of sterility with regard to a 59 year old female life tenant was sufficient to overcome the presumption of child bearing so as to meet the impossibility test, but it did not hold that *only* statistical evidence of sterility would suffice.

In the Ninth Bank and Trust Co. case, supra, the Court found that evidence that the female life tenants were 67, 63, and 57 years of age would rebut the presumption of ability to have issue, the Court stating:

"Why, however, should it be an exception to what is true of every other presumption of fact? No others are conclusive, but all yield to evidence."

In the Hoagland v. Kavanagh case, supra,—the evidence introduced to establish the impossibility of a female life tenant 45 years of age to have offspring was evidence of her general ill health. Neither medical nor statistical evidence of sterility was there involved. While the Court held that the taxpayer had failed to carry the burden of establishing impossibility of issue, this was a finding of fact and not a conclusion of law. The significant point in the case for present purposes is that evidence other than evidence of sterility was expressly considered. Moreover, the conclusion of the Court in the Hoagland case has been questioned in the Bankers Trust case, supra, wherein the Court, in referring to the Hoagland opinion, suggested that it "would bear re-examination in light of the clarifying amendment [i. e., the negligible possibility test being substituted for the impossibility test]."

Finally, continuing with the Bankers Trust Co. case, which, as noted above, is the only case in this series of cases involving the negligible possibility rule, the Court held that

"[I]n the case of a woman of 47 years, statistical data, *without more*, is an insufficient basis upon which to support a conclusion that the chance that the charitable remainder would be defeated 'was so remote as to be negligible.' "

Thus, it would appear from a review. of the cases relied upon by the Government, that not only do they fail to support the contention of the Government that only evidence of sterility, established by medical or statistical proof, is sufficient to satisfy the negligible possibility rule, but rather the contrary is suggest-,

**1016**

ed. In the recent case of Empire Trust Co. v. United States, 226 F.Supp. 623 (D.C.N.Y., 1963) the District Court expressly submitted all of the following factors for consideration by the jury in determining whether the possibility of two daughters, 44 and 39 years of age, having issue was so remote as to be negligible: age, general physical condition, evidence of physical capacity to bear children, statistical evidence, and opinions of expert witnesses.

■ Thus it is clear that the negligible possibility test is not identical to the impossibility test and further that modern cases construing the negligible possibility test hold factors other than sterility, medically or statistically proven, relevant to a determination of whether or not the possibility of the contingency of issue divesting the charitable remainder is so remote as to be negligible. As has been pointed out, evidence of physical incapacity, poor health, marital history, and volition of the life tenant are all relevant upon the possibility that the life tenant will have issue.

■ What then is required by the language "possibility * * * so remote as to be negligible"? It is, generally speaking, a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction. Empire Trust Co. v. United States, 226 F.Supp. 623 (D.C.N.Y., 1963) It is likewise a possibility which every dictate of reason and common sense would justify an intelligent person in disregarding as so highly improbable and remote as to be ignored as lacking in reason and substance. United States v. Provident Trust Co., supra. A negligible possibility is a possibility that would in the ordinary and reasonable affairs of men be disregarded in arriving at a present valuation of a future remainder interest in a serious business transaction, with *no* reduction in the value of the remainder interest being made by reason of the existence of such possibility.

■ What evidence may be admitted to rebut the presumption that all adult males are capable of producing offspring? Any evidence admissible under the general rules of relevancy and admissibility, and in accordance with Rule 43, Federal Rules of Civil Procedure.

■ What evidence may a jury base its verdict upon in finding a possibility of a life tenant having issue to be so remote as to be negligible? Evidence, properly admitted, which is sufficient to persuade reasonable minds of the existence of the matter in issue. The specialized and restrictive rules of evidence here advocated by the Government would, if adopted, largely defeat the provision in law for jury trials of this type of litigation.

As to the sufficiency of the evidence in this case, upon a motion for judgment notwithstanding the verdict, to sustain the verdict of the jury that the possibility as of September 13, 1959, of W. R. Long, Jr., having issue was so remote as to be negligible, there was testimony as to the following matters in the record:

■ Upon the death of his father, W. R. Long, Jr., was a 54 year old bachelor, living alone in a trailer in El Paso, Texas. He had been married in 1928 but shortly thereafter was divorced and had never remarried. He had never had children and was unknown to have had any association of any kind with the opposite sex since 1928. He was described as being very dirty, unkempt, and offensive in his personal habits, and was described as an "odd character" and as a "hobo". His only occupation appears to have been the collecting of junked automobile batteries. His medical history reflected that he was a heavy cigarette smoker, had a persistent cough and was obese with very poor dietary habits. Between 1956 and 1959 he had received medical treatment for a congenital back condition described as spina bifida, a stomach ulcer which had resulted in internal bleeding, and had been examined for blood in his urine from a cause then unknown. He was described as a very

uncooperative patient and given to self-medication and home remedies, including the use of creosote for his cough and lung condition. The Court is of the opinion that upon this state of the record the evidence was sufficient to present a jury issue as to the negligible possibility of W. R. Long, Jr., having issue.

With regard to the contention of the Government that the term "issue" as used in the will involved both natural born children and children by adoption, the Court submitted alternate special issues upon this to the jury, who in turn found that the possibility of W. R. Long, Jr., having children either by birth or by adoption was so remote as to be negligible. However, the Court is of the opinion that under Tennessee law, which the parties concede would here govern, the word "issue" would not include a child by adoption. Third National Bank in Nashville v. Noel, et al., 183 Tenn. 349. 192 S.W.2d 825 (1942); Delamott v. Stout, 207 Tenn. 406, 340 S.W.2d 894 (1960); Burdick v. Gilpin, 205 Tenn. 94, 325 S.W.2d 547 (1959); see also 86 A.L.R.2d 12.

With regard to the finding of the life expectancy of W. R. Long, Jr., as being ten years, it is the contention of the Government that upon the evidence presented the jury would have been required to speculate in arriving at any life expectancy other than one based upon the mortality tables. In this regard it should be noted that the Court excluded from the jury any evidence as to cancer of the bladder and cancer of the lungs, which was not discovered until after September 13, 1959, as well as any evidence of the death of W. R. Long, Jr., upon March 10, 1961. Much of the testimony relevant to the life expectancy issue, other than the mortality tables and the testimony of actuaries, has heretofore been summarized in this opinion. Two doctors who had examined W. R. Long, Jr., shortly before September 13, 1959, and were aware generally of his previous medical history testified that his life expectancy as of that time was "much less than normal or average" and was "way yonder less than normal". The Court is of the opinion that there was sufficient evidence in this regard to support the verdict of the jury.

While the Government would understandably desire to render the possibility of a life tenant having issue and the life expectancy of a life tenant legal questions rather than issues of fact, requiring findings of fact in each case, this result can be accomplished only by legislation or proper regulation, not by judicial fiat under the present state of the law relating to charitable deductions.

The motion for judgment notwithstanding the verdict will accordingly be overruled. The parties by agreement have withheld the entry of a judgment upon the verdict pending the decision of the Court upon the motion for judgment notwithstanding the verdict. Appropriate calculations will be made in accordance with the verdict of the jury and in accordance with the stipulations of the parties in the pre-trial order and a judgment submitted for entry by the Court. The motion of the plaintiff filed September 18, 1964, to be allowed to amend its complaint to claim as deductible expense the expense necessarily incurred in the prosecution of this claim for refund will be allowed.

An order will enter accordingly.